## Forrester *versus* Hanaway.

A. sold to B., under contracts of sale, two lots. B. paid a small portion of the purchase-money, took possession of the lots and made improvements thereon, to the value of from $2000 to $3000. Creditors of B. levied on his equitable interest therein when he confessed a judgment in ejectment to A., who with knowledge of the levy obtained possession and conveyed to a stranger for a nominal consideration against whom the purchaser at sheriff's sale under the levy brought ejectment. *Held*, reversing the judgment of the court below, that the possession obtained by the holder of the legal title under these circumstances was a fraud upon the lien creditors, and that the purchaser at sheriff's sale was entitled to recover possession without making a tender of the unpaid purchase-money to the holder of the legal title prior to bringing ejectment.

May 31st 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Luzerne county:* Of January Term 1876, No. 30. Certified from Eastern District.

[Forrester v. Hanaway.]

This was an action of ejectment, brought by Edward A. Forrester against Francis Hanaway to obtain possession of two lots of ground in the city of Scranton.

William Merrifield sold the lots in question to Patrick McNamara by two written contracts; the first executed on 21st of May 1869, the other on 1st of June 1871.

The consideration for the first lot was $350, $44 to be paid down; and for the second adjoining the former $300, $50 down: the balance on each contract to be paid in five equal annual payments with interest. The only payment ever made on either contract was the $50 on the second lot.

McNamara took and remained in possession of the lots until December 16th 1871, erecting buildings and making improvements thereon to the value of from $2000 to $3000.

Between the 3d day of January and the 25th of September 1871, judgments to an amount exceeding $3000 were entered in the Mayor's Court of Scranton against McNamara, all of which judgments were liens upon his equitable interest in the lands in controversy.

On the 23d of March 1871, Fisher & Co. obtained a judgment in the Mayor's Court against McNamara for the sum of $179.58 with costs, and on the 8th of May following a fi. fa. issued thereon and the marshal of the city levied on his lands and tenements, which, after inquest held, were duly condemned.

A vend. ex. issued upon this Fisher judgment on the 16th of November 1871, and the lands were advertised to be sold on the 16th of December following.

These facts were all within the knowledge of Merrifield when on the 15th of December 1871 he commenced an action of ejectment against McNamara, who still owed him $699 on the contract; this action being brought by virtue of an agreement under seal with the latter, whereby the issue of summons was waived and leave given to issue a writ of habere facias for the lands described in the two contracts. On the same day McNamara confessed a judgment for the land claimed in the ejectment to Merrifield, who issued his writ of habere facias and delivered it to the sheriff, and on the next day, December 16th 1871, the deputy sheriff went upon the premises and delivered possession thereof to one of the attorneys of Merrifield. Another of his attorneys went to the marshal's office where the premises were advertised to be sold upon the vend. ex. on the Fisher judgment and gave written notice to him that the premises in dispute had been recovered by Merrifield in an action of ejectment and possession delivered to him, in consequence of which notice the vend. ex. on the Fisher judgment was stayed.

On the same day Merrifield and wife, by deed absolute upon its face, and for the consideration of $699, conveyed the premises to Francis Hanaway, the defendant in this action of ejectment, which deed was acknowledged on the 18th and recorded on the 20th of December.

[Forrester *v.* Hanaway.]

Hanaway in his testimony said "that he did not purchase the land of Merrifield, that he did not know McNamara, nor the land in dispute, that Mr. Smith, the attorney of Merrifield, came to him and asked the use of his name in a deed of trust and he permitted it, and that he had never seen the deed."

At the February Term of 1872, an alias vend. ex. was issued upon the judgment of Fisher & Co., and the lands and tenements of McNamara, on the 10th of February, were sold by the marshal, by virtue of said writ, to Edward A. Forrester, for $625, and a deed therefor was duly acknowledged by the marshal to Forrester, who brought this action to recover them.

Under the Act of 6th of April 1869, Pamph. L. 725, the case was referred to a referee.

The following points were presented by plaintiff in error:—

1. The referee is requested to find, as matter of fact, that the judgment in ejectment confessed by McNamara to Merrifield was entered for the purpose of defrauding the judgment-creditors of McNamara.

2. The referee is requested to find, as matter of law, first, that the said judgment is void as to the creditors intended to be defrauded.

3. Second, that the plaintiff is entitled to be put into the same possession of the premises that McNamara had before the confession of judgment in ejectment without tender of purchase-money.

The referee found, as a conclusion of law, "that Merrifield had the right to bring his action of ejectment when he did; that McNamara had the right to confess the judgment that he did, and when so confessed, the whole title, both legal and equitable, was vested in William Merrifield, and this action of ejectment could not be sustained," and consequently found for the defendant.

In answer to the points, the referee said:—

"To the plaintiff's first point, the referee refuses to find as a matter of fact that the judgment in the ejectment confessed by McNamara to Merrifield was done to defraud the judgment-creditors of McNamara. The referee has found all the facts in his general finding, and is of the opinion that the law, when applied to those facts, does not constitute fraud on the part of Merrifield that would avoid his judgment in ejectment.

"The plaintiff's second point is covered in the answer to his first point."

The plaintiff's third point the referee answers as follows:—

"The plaintiff cannot maintain ejectment upon an equitable title without first paying or tendering the purchase-money due to the owner of the legal title, except where the owner of the legal title has unlawfully and fraudulently obtained the possession of the plaintiff. In this case Merrifield had the right to bring his ejectment for condition broken in contract, and, upon obtaining judg-

[Forrester v. Hanaway.]

ment in ejectment, had the right of possession which he obtained under his habere facias. And under the finding of the referee in the whole case, the question of tender could not arise, as the referee finds the defendant entitled to recover without regard to a tender."

The plaintiff excepted to the report of the referee, and assigned for error, 1. His answers to plaintiff's three points ; 2. In holding that fraud, actual or legal, was not to be inferred from the facts found by him, to impair the validity of the amicable judgment in ejectment and habere entered into by Merrifield and McNamara, as to existing judgment and execution creditors ; 3. In finding for the defendant.

The court below (Harding, P. J.) overruled the exceptions, and ordered that judgment be entered in accordance with the findings of the referee.

Plaintiff took this writ, and assigned for error this decree of the court.

*C. E. Royce*, for plaintiff in error.—The error of the referee was in considering this case identical with Damon *v.* Bache, 5 P. F. Smith 67, from which it differs materially. In Damon *v.* Bache, the judgment in ejectment confessed by vendee in favor of vendor was conditional and gave time to the vendee to pay purchase-money. In this case the confession of judgment was unconditional and absolute and possession given immediately to vendor. The judgment creditors here had no opportunity through diligence to protect their claims. The existence of fraud need not be proved positively, but may be inferred from facts calculated to establish it : Kaine *v.* Weigley, 10 Harris 179 ; Rogers *v.* Hall, 4 Watts 359. The principle on which a creditor has a right to accept a preference by judgment, is, that in the race between creditors of same class some one must be preferred. But Merrifield holding the legal title under articles could not be damnified by the vigilant creditors of McNamara : Covanhovan *v.* Hart, 9 Harris 501. It was not necessary for plaintiff to tender purchase-money before suit brought because the transfer of the possession of McNamara to Merrifield was a fraud upon the former's creditors : Bassler *v.* Niesly, 2 S. & R. 352 ; D'Arras *v.* Keyser, 2 Casey 249 ; Harris *v.* Bell, 10 S. & R. 39. The writ of possession in the Merrifield judgment should only have been granted by leave of court : Shaw *v.* Bayard, 4 Barr 257 ; Webster *v.* Webster, 3 P. F. Smith 161 ; Boyd *v.* McNaughton, 1 Id. 227. After execution and levy on real property in possession of the debtor, with a view to defeat creditors, he cannot transfer the possession even to the real owner : Stahle *v.* Spohn, 8 S. & R. 317 ; Stauffer *v.* Commissioners, 1 Watts 300.

*E. Merrifield* and *H. W. Palmer*, for defendant in error.—A lien upon an equitable estate is a mere inchoate right liable to be defeated by the action of the vendor and vendee. Where liens are

[Forrester *v.* Hanaway.]

entered upon an equitable estate, the value of the liens depends upon the estate and they survive or perish with it: Campbell and Pharos's Appeal, 12 Casey 247; Cover *v.* Black, 1 Barr 495; Watson *v.* Willard, 9 Id. 89; Grevemeyer *v.* Ins. Co., 12 P. F. Smith 340. A judgment cannot be impeached collaterally except upon proof of fraud: Heister *v.* Fortner, 2 Binn. 40; Lewis *v.* Smith, 2 S. & R. 142; Anderson *v.* Neff, 11 Id. 208; Stewart *v.* Stocker, 13 Id. 204. Fraud is not to be presumed: Bear's Estate, 10 P. F. Smith 430. It has never been deemed a fraud in Pennsylvania or elsewhere for a debtor honestly to prefer one creditor to another by giving a judgment: Davis *v.* Charles, 8 Barr 82; Lowry *v.* Coulter, 9 Id. 349; Uhler *v.* Maulfair, 11 Harris 481; Forsyth *v.* Matthews, 2 Id. 100; Bentz *v.* Rockey, 19 P. F. Smith 71; York County Bank *v.* Carter, 2 Wright 446; Hugus *v.* Robinson, 12 Harris 9; Dunlap *v.* Bournonville, 2 Casey 72; McMarlan *v.* English, 24 P. F. Smith 296; Shontz *v.* Brown, 3 Casey 123. The case of D'Arras *v.* Keyser, 2 Casey 249, *supra*, does not sustain the position taken by the plaintiff. The court in that case simply held that the bringing of the money into court was not essential in that particular case, as the plaintiff had shown himself ready and willing to pay. Here there has been no offer to pay. In this action the plaintiff relies entirely upon an equitable title in which the tender must precede the action: Chahoon *v.* Hollenback, 16 S. & R. 425; Thomas *v.* Wright, 9 Id. 89.

Mr. Justice MERCUR delivered the opinion of the court, October 9th 1876.

This was an action of ejectment. It was referred under the Act of 6th April 1869, Pamph. L. 725, and its several supplements. The main facts found by the referee are substantially these: Merrifield sold the lands in question by two written contracts to McNamara. The first contract was executed in May 1869 in consideration of $350, to be paid for the land therein described; $44 thereof to be paid down and the residue in five equal annual payments with interest. The other contract was for a lot, adjoining the former, and was executed in June 1869. It stipulated for the payment of $300, of which $50 was to be paid down, and the residue in five equal annual payments with interest. The $50 down payment was made on the last contract; but no other payment had been made on either contract.

McNamara entered into possession of both lots, erected buildings, and made improvements thereon, to the value of from $2000 to $3000. He continued in possession until 16th December 1871. At this time the amount unpaid on both contracts was about $693. In January 1871 the creditors of McNamara began to enter judgments against him. They became liens on his equitable interest in the lands. Before the 1st of October following these liens exceeded

[Forrester *v.* Hanaway.]

$3000. In May 1871, a fi. fa. was issued on one of these judgment liens and the land was levied on. An inquest was held and the land condemned. In November 1871, a vend. exp. was issued, and the land duly advertised to be sold on the 16th December following. All these facts were known to Merrifield. Yet with a full knowledge thereof, on the 15th December, being one day preceding the intended sheriff's sale, he and McNamara entered into a written agreement by which an action of ejectment for the lands was commenced, judgment confessed in favor of Merrifield with leave to issue a writ of habere facias, and the writ was issued on the same day. On the next day, the writ was executed by giving possession to Merrifield. By deed dated the same day and acknowledged two days thereafter, Merrifield, for the consideration of $699 therein recited, conveyed the lands to the defendant in error.

When the lands were exposed at sheriff's sale on the 16th December notice was given by Merrifield of his recovery in ejectment, and that possession had been given to him in pursuance thereof. Thereupon the writ of vend. exp. was stayed by the plaintiff in the execution. An alias vend. exp. was subsequently issued on which the land was duly sold on the 10th February 1872 to the plaintiff in error. A deed therefor was duly executed, acknowledged and delivered to him.

The purchase by the defendant from Merrifield was not on a good and valuable consideration. The defendant did not know either Merrifield, McNamara, nor the land. He never paid anything for the land and knew nothing about it. C. Smith, Esq., paid the money to Merrifield. Smith called on the defendant and requested "the use of his name to hold in trust for some one." The name of that "some one" does not appear to have been proved. The referee therefore found that the defendant "holds the title as a naked trustee for a nameless cestui que trust."

The plaintiff requested the referee to find that the judgment confessed in ejectment was entered into by the parties thereto, for the purpose of defrauding the judgment creditors of McNamara; also that the judgment confessed was void as to the creditors intended to be defrauded. The referee refused to find as requested; but says he "has found all the facts in his general finding, and is of the opinion that the law, when applied to those facts, does not constitute fraud on the part of Merrifield that would avoid his judgment in ejectment." He therefore found for the defendant. The court confirmed the finding and entered judgment.

The correctness of the referee's conclusion of law is the important question in the case.

The controversy is between the purchaser at sheriff's sale of McNamara's equitable estate, and one who acquired a conveyance from Merrifield in the manner stated. The defendant stands on no higher ground than Merrifield occupied. Did the latter then recover the

[Forrester *v.* Hanaway.]

land in such a manner as to successfully remove all McNamara's equitable estate out of the reach of his lien creditors?

It is true, where liens ·are entered against an equitable estate, their value depends on that estate, and they survive or perish with it: Campbell *et al.'s* Appeal, 12 Casey 247. Such a lien creditor runs the risk of the estate of his debtor being recovered by the holder of the legal title by means of a fair and usual proceeding at law. He has a right, however, to claim protection against a fraudulent combination to divest the lien of his judgment: Stahle *v.* Spohn, 8 S. & R. 317.

The facts found by the referee show McNamara had an estate worth some $2000 beyond the unpaid purchase-money. Some of that money was not yet due. A part of it was payable about two and a half years thereafter. He was entitled to a conditional verdict to secure him in that further time.

We may assume the judgment creditor had knowledge, either actual or constructive, of the written contracts. He then knew that some of the instalments were past due; but he also knew others were payable at future times. He was on the eve of selling the equitable estate, so that the purchaser thereof might, with safety, pay the purchase-money due on the legal title.

If an action of ejectment then commenced had been suffered to take its regular course, ending in a conditional verdict, or if the confession of judgment had stipulated for a payment at some future time, as in Damon *v.* Bache, 5 P. F. Smith 67, the rights of the lien creditor, and the purchaser under the same, as well as the rights of Merrifield, could have been duly protected and enforced.

The agreement between the owners of the legal and the equitable title, by which the latter was given up, is designated by the referee as "very sharp practice, indeed." It was, in fact, not only a change of the contract, so as to make instalments, payable in the future, due at once; but also to yield up, for no consideration, an estate of large value, an estate then in the grasp of McNamara's creditors, and the proceeds of which they were entitled to receive.

This case must not be confounded with that class of cases in which it has been held that one creditor may be preferred by a confession of judgment; although it be done with the design and effect of removing the property from the reach of another creditor, equally meritorious. In those cases the injury to one is an incident necessarily flowing from the legal protection of the other, who could not otherwise be protected. It is where the estate is insufficient to protect both creditors. In this case Merrifield needed no additional protection. He was already fully secured. A sale of the equitable estate in no wise affected his legal title: Canon *v.* Campbell, 10 Casey 309; nor his remedy to enforce payment by ejectment.

During the impending sheriff's sale, and with unusual haste, the agreements as to the times of payment were changed; the judg-

[Forrester v. Hanaway.]

ment was confessed; the whole estate of McNamara was relinquished; the writ of possession was issued and executed. Immediately thereafter, the land was professedly sold for about the amount due for the legal title, being one-fourth its just value, and a conveyance thereof made to a trustee for some unknown person. Who was to permanently enjoy the benefits of the value of the estate, thus wrested from McNamara's creditors, the evidence fails to disclose. If Merrifield received no more than the consideration recited in his deed to the defendant in error, they were not enjoyed by him, but by some "unknown person."

All the facts proved, naturally lead the mind to the conclusion that the primary object of the arrangement was to remove the estate of McNamara out of the reach of his lien creditors. If the conclusiveness claimed for that judgment by the defendant in error be given to it, such will be its undoubted effect. As every sane person is presumed to intend the natural and probable consequence of his own deliberate act, it follows that the facts found prove such to have been the intent. They prove a constructive fraud on the lien creditors of McNamara. In its effect this is tantamount to actual fraud, and the policy of the law makes the act illegal: McKibbin v. Martin, 14 P. F. Smith 352. Legal fraud, where the facts are ascertained, is for the court: Dornick v. Keichenback, 10 S. & R. 90.

Possession then having been obtained by the holder of the legal title under circumstances which we must declare a fraud on the lien creditors of McNamara, it follows that the purchaser at sheriff's sale is entitled to recover that possession from the defendant in error, without making a tender prior to bringing ejectment: Harris v. Bell, 10 S. & R. 39; Grigg v. Patterson, 9 W. & S. 208; Heft v. McGill, 3 Barr 256; Ives v. Trors, 5 Id. 121; D'Arras v. Keyser, 3 Casey 240.

We think therefore the able referee and learned judge erred in their conclusions of law, and the assignments are sustained.

Judgment reversed and a *procedendo* awarded.