## Stewart *versus* Reed.

Where there has been a fraud committed in obtaining a sheriff's sale, and the purchaser at said sale was not a party to it, his vendee will take a good title, although the latter had notice or knowledge of the fraud.

October 13th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1879, No. 235.

Ejectment by Martin Reed against John K. Stewart, William Weaver and others, for two tracts of land in Allegheny county, in possession of said Weaver as tenant of said Stewart.

The title to the land was admitted by both parties to have been in Henry Weaver prior to July 19th 1870, at which time he executed and delivered to John Little, Jr., a mortgage on the tracts of land in dispute, to secure the payment of $6000. Little assigned the mortgage to Samuel McClurkan, who advanced $5000 on it to Weaver. Weaver failed to pay the interest, and McClurkan foreclosed the mortgage, and obtained judgment, in default of an affidavit of defence, for $5446.77. A levari facias was issued and the property sold by the sheriff. At the sale the property was knocked down to McClurkan for $5000; the judgments which preceded his mortgage, and were entitled to distribution out of the fund realized by the sale, amounting with interest and costs to date of sale to $2770.28.

His own debt with interest and costs to the day of the sale amounted to $5782.09. At the time of the sale Weaver was insolvent, a number of judgments being entered against him aggregating $20,749.94. Stewart, the defendant, owned two of

[Stewart *v.* Reed.]

these judgments. Reed, the plaintiff, owned one. It appeared that Stewart had entered into an arrangement with McClurkan whereby Stewart was substituted on the sheriff's books as the purchaser instead of McClurkan, and the sheriff made his deed directly to Stewart. The latter agreed to pay McClurkan the whole amount of his claim, and all liens prior to the mortgage. McClurkan gave Stewart time for the payment of $3120, and took a judgment on the land to insure the payment of it. Emily Weaver, wife of Henry Weaver, had two judgments prior to McClurkan's mortgage. Stewart also arranged for payment to her. Reed issued execution on his judgment, and had the two tracts of land levied upon as the property of Henry Weaver. They were sold by the sheriff and bought by Reed, who after he had obtained a deed from the sheriff brought this action against Stewart and his tenant to acquire possession.

The plaintiff claimed on the trial of the case, that the arrangement made between Stewart and McClurkan, by which the deed from the sheriff was made to Stewart instead of McClurkan, and the agreement between Stewart and Mrs. Emily Weaver, by which Stewart gave her credit on her mortgage held by him, for the amount she should have received on her judgment through the hands of the sheriff, were fraudulent and in violation of the provisions of the statute of 13th Elizabeth, and that the title to the land did not pass to Stewart by the sheriff's sale, but remained in Henry Weaver until the sale on Reed's execution, when by virtue of that sale it became vested in Reed.

It was also claimed by the plaintiff in support of this position, that in a conversation between Reed and Stewart preceding the sheriff's sale, Stewart stated to Reed that a certain Benjamin Butler held a judgment against Weaver for between $3000 and $4000; that he was deterred from bidding on the property by this statement of Stewart's, though he made no effort to ascertain the truth of this statement, and had made no effort at any time to ascertain the amount of liens against Weaver's farm.

It was also further claimed by the plaintiffs below, that some months before the sheriff's sale and before McClurkan had issued his execution, Stewart sought to purchase the Butler judgment; that Stewart and Butler had come to Pittsburgh together to see if it could be transferred to Stewart, and that Stewart had agreed to pay Butler the balance of his judgment in case he bought the Weaver farm, and in case the balance owing on the judgment did not exceed $1000. It was claimed and strongly urged that this promise had reference to a sheriff's sale, that Butler relied upon it and was misled by it, and did not bid or attend the sale, though in his testimony he stated he was unable to buy the property, and had no intention of bidding on it in any event.

[Stewart v. Reed.]

The following were among the points submitted by the plaintiff, both which the court, White, J., affirmed:

3d. That if the jury are satisfied from the evidence that Reed was misled at the sale and deterred from bidding by reason of a communication made to him by Stewart, as to the amount due on the Butler judgment, and that such representation was false, and was made in pursuance of an arrangement between said defendant and Butler, that then the sale was void in law, a fraud on creditors, and no title passed by the sale to the defendant.

4th. That if the jury believe from the evidence the property in dispute was sold at the sale to McClurkan at less than its value, the result of connivance between Stewart, the defendant, and Butler, and Henry Weaver, and the defendant afterwards, by an arrangement with McClurkan, was substituted as bidder, he, the defendant, would be charged with all the consequences of such unlawful combination, and stand in no better position than if he had been the actual bidder at the sale.

The verdict was for plaintiff, when defendants took this writ, their third and fourth assignments of error being the affirmance of the above points.

*Fetterman & Johnston*, for plaintiffs in error.

*Barton & Sons*, for defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, November 3d 1879.

Whatever fraud may have been committed in this case it is clear that Samuel McClurkan, the purchaser at the sheriff's sale, was not a party to it. Hence his title was free from taint, and under all the authorities his vendee would take a good title even though the latter had notice or knowledge of the fraud. This is a familiar rule, and is essential to enable honest purchasers to dispose of property which they have acquired in good faith.

Had the plaintiff in error been the purchaser at the sheriff's sale, the case might have come within the ruling in Abbey v. Dewey, 1 Casey 413, where it was held that, "a purchaser at sheriff's sale who resorts to any trick or device to get the property at an unfair value, and thereby purchases it for less than it would have sold for at a fair sale, renders the title so acquired utterly void. The practical difficulty in the way of applying this principle to this case is that the property in question was sold by the sheriff to McClurkan. It is true the latter did not take the legal title, as he afterwards sold to Stewart, the plaintiff in error, and the sheriff's deed was made direct to him. But during this interval McClurkan held the equitable title, which was as much under the protection of the rule of law above referred to, as was the legal

10 NORRIS—19

title.  McClurkan bought at the sheriff's sale for his own protection as a lien-creditor.   There was no understanding or agreement with Stewart that the latter was to have any advantage of the sale or interest in the property.   Stewart had no reason to suppose he could buy of McClurkan upon any better terms than he could of any stranger.   He did not even know that he could buy at all.  If he schemed for the depreciation of the property, he schemed for the benefit of McClurkan, and any advantage to himself depended upon the mere possibility of his purchasing from him upon advantageous terms.   He did succeed in this, and the question now is, can the title in his hands be avoided by reason of his alleged fraud in connection with the sheriff's sale?   We are of opinion that this cannot be done.   To do so would be in effect to strike down McClurkan's equitable title.   This might not injure the legal representatives of Mr. McClurkan, but we cannot say so.   They are not parties to this proceeding.   That they do not complain is therefore without significance.   In the absence of any collusion between McClurkan and Stewart, we are clearly of opinion that Stewart is entitled to take shelter behind McClurkan's equitable title.

The third and fourth assignments of error are sustained.   The others do not require discussion.

The judgment is reversed and a *venire facias de novo* awarded.