115    580
24 SC ⁸608

# Miles *versus* Lewis and Barrowman.

1. A judgment confessed in an amicable action of ejectment, by the owner of the equitable title, in favor of the owner of the legal title to land, conditioned that it shall be void, if the amount justly due the latter shall be paid within a stipulated time, if entered into by the parties for the purpose of hindering, delaying or defrauding the creditors of the former, is voidable by his said creditors, and for the purposes of applying his interest in the land to the satisfaction of the claims of said creditors, the same is deemed to be still vested in him; and whether or not said judgment was so entered into by the parties, is a question of fact for the jury from all the evidence in the case.

2. The purchaser, at sheriff's sale, of the interest of the owner of the equitable title to land, may maintain an action of ejectment, against the owner of the legal title for the same, without paying or tendering the purchase money due the owner of the legal title, where the owner of the legal title, and the owner of the equitable title to said land, have colluded to hinder, delay and defraud the creditor of the latter, on whose judgment the said sheriff's sale was made, by means of an amicable action of ejectment with confession of judgment entered into between them.

[Miles v. Lewis and Barrowman.]

3. The burden of proof is on him, who charges that a judgment in eject-ment was collusively confessed and entered, for the purpose of hinder-ing, delaying or defrauding creditors, and he must make out his case, under the rules of evidence, applicable in actions at law; he is not how-ever required to do so under the rules of equity, that the equivalent of the testimony of two witnesses is necessary to overcome the responsive answer to the fact averred in the bill.

4. The rule in Martin v. Berens, 17 P. F. Smith, 459, and Thorne, McFarlane & Co. v. Warfflein, 4 Outerbridge, 519, which applies where one party to an instrument seeks to vary, reform or set it aside by oral testimony, does not apply where a party to a collusive and fraudulent judgment confessed and entered for the purpose of hindering, delaying or defraud-ing his creditors testifies as to said collusion and fraudulent purpose.

February 2d, 1887. Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Lackawanna* coun-ty : Of January Term 1887, No. 286.

Ejectment by Benjamin Miles against Benjamin Lewis and Thomas Barrowman for a lot of land situate in the city of Scranton, Pa. Plea, not guilty.

The following are the facts as they appeared on the trial before HAND, P. J.:

Thomas Barrowman, one of the defendants, contracted to sell the lot described in the writ to W. S. Griffiths. On the 7th day of November, 1870, Griffiths contracted to sell it to Benjamin Lewis, the other defendant, for $670, payable in in-stallments. Griffiths, on the 12th of April, 1871, assigned his interest in the lot to A. and T. Barrowman, T. Barrowman being one of the defendants. On the 22d of May, 1874, A. Barrowman assigned his interest in the lot to Thomas Barrow-man. Thomas Barrowman, who held the legal title, thus became possessed of the equitable title of Griffiths, subject to the equitable title of Lewis, under Griffiths, which he recog-nized and upon which he from time to time received payments from Lewis, until 12th May, 1877, when, according to Lewis, there was due Barrowman upon it the sum of $220 and interest, according to Barrowman the amount due was $344.53. At the time Lewis purchased this lot from Griffiths it was without any improvements. To enable him to build a house upon it and improve it he borrowed from the Miners' and Laborers' Building Association the sum of $1,000, and gave them his judgment note therefor.

This note the Miners' and Laborers' Building Association entered of record 15th May, 1872, when it became a lien against the interest of Lewis in said lot. The building association kept the lien of this judgment revived and continued it against this lot by *scire facias.*

With this money obtained from the Building Association Lewis built a house upon the lot and otherwise improved it, so that on the 12th day of May, 1877, the lot was worth from $800, as estimated by Barrowman, to $1,600 as estimated by Lewis.

Miles based his right to recover, under a sheriff's deed to him for the interest of Benjamin Lewis in this lot, dated 16th October, 1879. This sale was made on a *fieri facias* issued on the judgment of the Miners' and Laborers' Association, which had been a lien on the real estate sold from the 15th of May, 1872.

Lewis made no defence to the plaintiff's claim.

Barrowman's defence was that at the time of the sheriff's sale of the interest of Benjamin Lewis in the real estate, that he, Lewis, had no interest in it. That all the interest that he ever had was an equitable interest which was divested by an amicable action of ejectment with confession of judgment entered into between him and Lewis dated 12th May, 1877, in which it was agreed that the amount of purchase money then due Barrowman, the holder of the legal title, was $344.53 and that unless said amount was paid within ten days from date a *habere facias possessionem* might issue.

Judgment was entered upon this in the Court of Common Pleas on May 24th, 1877, and upon the same day a writ of *habere facias possessionem* was issued, which the sheriff executed the next day, Lewis signing a lease for the lot with Barrowman. He was thus not disturbed in his possession. Lewis testified that this arrangement was entered into to defraud the Miners' and Laborers' Building Association of their judgment and that the understanding between him and Barrowman was that while he was nominally his tenant their relations had not changed and that the amount he paid as rent should be credited to him as payments on the purchase money, and when the payments so made equaled the amount of purchase money due, Barrowman would make a deed to him, or some one whom he might name.

Barrowman denied this. Lewis testified that the lot was of sufficient value to pay both Barrowman and the Building Association.

The plaintiff requested the court to charge *inter alia* as follows:

First—" That if there is evidence in this case tending to show that the amicable action entered into between Barrowman and Lewis was entered into for the purpose of hindering or delaying the Miners' and Laborers' Building Association in the collection of their judgment, or for the purpose of defeat-

ing the claim of said Association, then it is such evidence of fraud and collusion as ought to be submitted to the jury."

Answer of the Court—If there were evidence in the case, we would affirm this principle. We affirm it as a principle of law, but we answer it in the negative on the facts of this case. (Second assignment of error.)

Second—"If the jury believe from the evidence in this case, that Thomas Barrowman and B. Lewis effected the conveyance of the land described in the writ to Thomas Barrowman through the amicable action of ejectment for the purpose of defrauding the Miners' and Laborers' Building Association, such conveyance is fraudulent as against the Miners' and Laborers' Building Association, and for all purposes of appropriating the property of B. Lewis to the satisfaction of the loan of the Miners' and Laborers' Building Association, the equitable title to the property at the time of the sheriff's sale to Miles was deemed to be still vested in B. Lewis."

Answer of the Court—We negative this point upon the facts of this case.　(Third assignment of error.)

Third—"If the jury believe from the evidence that the amicable action of ejectment and confession of judgment in the same by B. Lewis to Barrowman, was entered into by B. Lewis and Barrowman for the purpose of defrauding the plaintiff in the judgment and execution on which the land was sold, and was purchased by the plaintiff here, and that the land was that of B. Lewis at the time of the sheriff's sale of the interest of B. Lewis in the same to the plaintiff here, to be reconveyed to B. Lewis, or to any one whom he might name, upon payment of the purchase money due Barrowman on said land, the plaintiff is entitled to recover and the verdict must be for the plaintiff for the land described in the writ, conditioned on his paying Barrowman, the defendant, the amount due him by B. Lewis."

Answer of the Court—We answer this in the negative upon the facts in this case. Miles should have tendered the purchase money, if he wished to stand upon Lewis' equities. (Fourth assignment of error.)

Fourth—"Under all the evidence in this case in any event the verdict must be against Benjamin Lewis for the land described in the writ."

Answer of the Court—We answer that in the negative. (Fifth assignment of error.)

Fifth—"That if the jury believe that Barrowman and Lewis, by means of an amicable action of ejectment, perpetrated a fraud upon the Building Association, a lien creditor of Lewis, the purchaser at sheriff's sale, the plaintiff in this case is entitled to recover without making a tender of the un-

[Miles *v.* Lewis and Barrowman.]

paid purchase money to the holder of the legal title prior to his bringing his action of ejectment."

Answer of the Court—We answer that in this case there appears to be no fraud against the Building Association. If there is an equity outside of the question alleged, of fraud *ex maleficio*, of fraud on the ground that Barrowman is a trustee *ex maleficio*, that equity can be secured by a conditional decree by the court on its equity side, Barrowman would not be made a trustee *ex maleficio* except by refusing to convey or offer of payment. Under the principles and the facts in this case, your verdict will have to be, gentlemen of the jury, for the defendant. (Sixth assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

It is further alleged and sworn to by Benjamin Lewis, that when Thomas Barrowman took this tract of land back, under these proceedings in ejectment, that he gave Lewis a lease, which is true, for the premises, and that at the same time he agreed with Lewis that if he, Lewis, would pay him the amount that was due him, or when he did pay him the amount that was due him, he would reconvey, or convey rather, the land to him.

Mr. Barrowman is not in the position of having received a conveyance from Benjamin Lewis; he is simply in the position of having enforced his own purchase money against the tract of land.

Now, this evidence in the case, only testified to by Benjamin Lewis, alters or contradicts the written agreements of the parties, to wit: the agreement for the amicable ejectment and the lease in the case. But giving to this agreement the full force that the words sworn to can imply (and I should state here, however, before I say that, that there is but one witness who testifies to this arrangement, and that is Benjamin Lewis, who in his testimony admits that he has an interest in this case, and that it is against Thomas Barrowman) but as I say, admitting the whole force that can be given to these words that are sworn to as having been uttered by Thomas Barrowman, and the agreement that is set up, it amounted to an agreement by the holder of the legal title, which he had acquired again against the equitable title, that if he received the amount that was due him, he would make a conveyance.

Assuming that the lease, at the rate of five dollars per month, which as the evidence shows, is not a high rate of rental, but on the contrary rather a low rate, assuming that the rental was to be applied to the purchase money that was due Thomas Barrowman, it would require a longer time than elapsed before this action was brought to raise any equity that

[Miles *v.* Lewis and Barrowman.]

would entitle Benjamin Lewis, or any one holding under him, to bring his action and compel a conveyance on the part of Mr. Barrowman.

Mr. Lewis was obligated, if no time were fixed, to pay that purchase money, to pay it within a reasonable time. The evidence is, that he even failed to pay the rent, and the evidence is that he remained in possession of that land from 1877 down to the time when this suit was brought, during which he had the full opportunity, if that agreement were good, to make payment to Thomas Barrowman for the amount that was due him.

The evidence further discloses that he remained in possession clear down until 1882. Now there is no equity that this court will enforce on its chancery side, to compel a conveyance to Benjamin Lewis, or any one claiming under him, without the payment of the money to Thomas Barrowman. If this case is eventually to be decided wholly upon the equity that is set up by this plaintiff, that equity can be reached without a verdict here, because it is a fixed equity, the amount can be easily calculated, and a decree could be made upon the payment of the money. But we hold in this case that this action being brought by Henry Miles without an offer to pay Thomas Barrowman the amount that was due him, or before the arrangement was completed that is set up by Benjamin Lewis, if he stands upon that, his action was premature, brought too soon, and at all events the court, under the circumstances of this case, would not, at this late day, allow a verdict to go in favor of the plaintiff against Thomas Barrowman, except there was evidence that a tender of the amount due Thomas Barrowman was made before the action was brought, because upon these equities Henry Miles is seeking, as a vendee, to enforce the specific articles of agreement, and has shown no disposition on his part, as far as the evidence is concerned, to satisfy the just and equitable claim of Thomas Barrowman against this tract of land.

Upon all the facts of the case, therefore, and upon the equitable principles that control us, we say there is no fraud in this case against Benjamin Lewis, for he has not complied with his agreement with Thomas Barrowman, or attempted to comply with it. That there is no fraud against Henry Miles, for he stands in no better position than Benjamin Lewis, and has not offered to comply before the suit was brought.

There is no fraud against the Building Association, for they had their lien upon the equitable title in 1872, and they rested quietly on it until down in 1879. Knowing that Mr. Barrowman had the legal title, and that they were liable at any time to be excluded from any interest in the equitable title, when-

ever he saw fit to enforce his payment for purchase money, they laid by for seven years. If they had desired to enforce their right to have a legal title, it was their duty to have sold the land upon their judgment, becoming a vendee, then tender Thomas Barrowman the purchase money, and ask for a deed. This they did not do. We hold that Henry Miles stands in no better position than they do.

The court gave binding instructions to the jury to find their verdict for the defendants. (First assignment of error.)

Verdict for the defendants and judgment thereon. Whereupon the plaintiff took this writ and filed the assignments of error as hereinbefore shown.

*H. M. Edwards* and *Lemuel Amerman* (*C. Comegys* with them) for plaintiff in error.

Fraudulent conveyance may be effected through an action of ejectment: Forrester *v.* Hanaway, 1 Norris, 218. See also Sweetzer's Appeal, 21 P. F. Smith, 264.

In support " of all true and plain dealing, bargaining and chevisance, between man and man, without the which no commonwealth or civil society can be maintained or continued," courts have never permitted the wit of man to circumvent the statute of fraudulent conveyances: 13 Elizabeth Ch., 5, §§ 1, 2.

Time and again it has been determined by this court that a fraudulent conveyance, or what is the same thing a fraudulent suit, judgment and execution, is void as against the person intended to be defrauded by it, and for all purposes of appropriating the property to the satisfaction of his claim, the property is to be deemed still vested in the debtor: Kimble *v.* Smith, 9 W. N. C. 357; Harlin *v.* McLaughlin, 9 Norris, 293; Monroe *v.* Smith, 29 P. F. Smith, 459; Snyder *v.* Christ, 3 Wright, 499; Byrod's Appeal, 7 Casey, 241; Phipps *v.* Boyd, 4 P. F. Smith, 342; Heath *v.* Page, 13 Id., 123; Haymaker's Appeal, 3 Id., 306; McKee *v.* Gilchrist, 3 Watts, 230; Rhoad's Appeal, 11 W. N. C., 276.

A judgment confessed for an amount honestly due is voidable by the defendant's creditors, if it were given and received for the purpose of forcing such creditors into a compromise of their claims, even though it were never used for that purpose: Bunn, Raiguel & Co. *v.* Ahl, 5 Casey, 387.

As to the kind and sufficiency of evidence necessary to establish a fraudulent conveyance, the opinion of BLACK, C. J., in Kaine *v.* Weigley, 10 Harris, 183, is authority.

If possession then has been obtained by Barrowman, the holder of the legal title under circumstances which is a fraud on the lien creditor, the Miners' and Laborers' Building Association, it follows that Miles, the purchaser at sheriff's sale, is

entitled to recover that possession from Barrowman without making a tender prior to bringing ejectment, even if there were purchase money due: Forresters v. Hanaway, 1 Norris, 225; Harris v. Bell, 10 S. & R., 39; Grigg v. Patterson, 9 W. & S., 208; Heft v. McGill, 3 Barr., 256; Ives v. Trois, 5 Id., 121; D'Arras v. Keyser, 3 Casey, 240.

*E. Merrifield* (*S. B. Price* with him), for defendants in error. —Barrowman pursued his legal rights; he could not in that pursuit commit a wrong. Damon v. Bache, 55 Pa. St., 67. It was not his business to take care of the lien creditors of Lewis: Price's Appeal, 2 Common Pleas Rep., 79. The plaintiff seeks to set aside the written instruments of the parties by the parol testimony of one of them. This cannot be done. As to when a written instrument will be set aside or changed by parol testimony, see Martin v. Berens, 17 P. F. S. 459; Thorne v. Warfflein, 4 Out., 519; Morton v. Weaver, 3 Out., 47; Cummins v. Hulburt, 11 Norris, 165.

Mr. Justice TRUNKEY delivered the opinion of the court March 21st, 1887.

In Damon v. Bache, 55 Pa., 67, it was said that no wrong can be committed in the pursuit of legal rights by lawful means. Therefore a vendor of land upon request of the vendee because of his indebtedness to others, may bring an action of ejectment, take a confession of judgment to be released on payment of the sum due and owing by the vendee at a stipulated time, and on failure of the vendee to perform the condition, issue execution and recover possession of the land. It matters not that the vendee suggested the action, and had some expectation in favor of his father and mother, for the vendor did nothing wrong in vigilantly enforcing his legal rights, and, where there is no wrong, there can be no fraud. The evidence in that case was insufficient to warrant the inference of an intent on the part of the plaintiff in the action in ejectment, to hinder or delay a creditor of the vendee.

Where the owner of the equitable title, being indebted to divers persons, confesses judgment to the vendor in ejectment, conditional for payment of the purchase money, the judgment will not be set aside in favor of the vendee's other creditors, if there is no evidence of fraudulent intent. Judgment creditors of the vendee must take care of themselves, and in case there is no actual fraud, they cannot complain that the plaintiff, in the amicable action and confession of judgment in ejectment, allowed the time given for payment of the money to expire before filing the confession of judgment in court, for that fact of itself does not show fraudulent collusion to hinder

creditors: Price's Appeal, 2 Com. Pleas R., 79. But it was remarked by Justice GORDON: "Had other circumstances indicated a collusion between the parties for the purpose of defrauding the appellant, this retention of the confession until the last day of grace would undoubtedly have been evidence bearing upon the fraudulent intention."

Land was sold by articles of agreement, and nearly $700 of purchase money remained unpaid, a portion thereof not due. The vendee had made improvements, and his equitable interest was worth $2,000; judgments were entered against him exceeding $3,000, and on one of the judgments execution had been issued, and the property advertised for sale. On the day before the date fixed for the sheriff's sale, the vendee confessed judgment in ejectment, without stay, in favor of the vendor, who immediately issued execution and recovered possession. There was no direct evidence of an agreement or promise by the vendor in favor of the vendee or his family; nor was there evidence that the vendee had an expectancy in favor of his parents. The unusual haste, the agreement making all the purchase money due, with the other facts, were sufficient, as remarked by the present Chief Justice, to "naturally lead the mind to the conclusion that the primary object of the arrangement was to remove the estate of McNamara out of the reach of his creditors." And, as to them, the judgment in ejectment was void: Forrester *v.* Hanaway, 82 Pa., 218.

In this case, the amicable confession of judgment in ejectment, to be released on payment of $344.53, purchase money, in ten days, was signed May 12th, 1877, and filed in court twelve days thereafter. Execution was issued on the day the judgment was filed, and on the next day the plaintiff and sheriff went to the premises, whereupon the defendant took a written lease for the same, and the sheriff returned his writ showing he had delivered possession as commanded. At the time of this transaction, the vendee was indebted by judgment in favor of the Miners' and Laborers' Building and Loan Association $1,000. There is evidence tending to show that the vendee's interest in the land was worth the amount of that judgment.

Had the jury believed the testimony of Benjamin Lewis, they would have been warranted in finding that he told Thomas Barrowman that said Association was about to push its judgment to collection, and that Lewis and Barrowman agreed to enter the amicable action and confession of judgment in ejectment for the very purpose of hindering said Association from reaching the property. He says that it was understood between them that he paid no rent, that the payments of nom-

[Miles v. Lewis and Barrowman.]

inal rent were to apply on the purchase money. His testimony ought to be considered in connection with the short time given in the confession of judgment for payment of the money, the filing of that judgment, and the issuing of execution at the same time, and by the contemporaneous service of the writ by the sheriff, and the execution of the previously prepared lease.

Barrowman contradicts Lewis, and his testimony is not without some corroboration. But the disputed questions of fact were for the jury, not the court. The assignments of error, except the fourth and fifth, are sustained. The fourth is not sustained for the reason that, if the plaintiff is entitled to recover, it is because the amicable action in ejectment, with judgment confessed, was collusive and fraudulent as to the judgment creditor named, and the plaintiff is not bound to tender or pay any money to the vendor.

The defendants contend that this case is within the principle ruled in Martin v. Berens, 67 Pa., 459, and Thorne, McFarlane & Co. v. Warfflein, 100 Id., 519, which applies where one party to an instrument seeks to vary, reform or set it aside by oral testimony. But here the parties to the judgment in ejectment are bound by what they did—they are competent witnesses—and should Barrowman admit that Lewis tells the truth, Lewis is bound by the judgment and lease. He would not be heard were he to set up the collusion to hinder his creditor for the purpose of defeating the result of the judgment as to himself. As to all persons, except the creditor sought to be defrauded, the judgment in ejectment is valid.

A creditor who seeks to avoid that judgment must satisfy the jury of collusion between the parties thereto to defraud him. The purchaser at sheriff's sale, or person holding under him, attacks not the existence or validity of a writing or judgment, but he charges that the judgment was collusively confessed and entered for the purpose of hindering or delaying the creditor on whose judgment the property was sold. The burden is on him to make out his case under the rules of evidence applicable in actions at law; not under the rule in equity that the equivalent of the testimony of two witnesses is necessary to overcome the responsive answer to a fact averred in the bill. The plaintiff alleges and must prove that the parties in the judgment, execution and lease, though unassailable as to themselves, intended thereby to defraud the creditor.

Judgment reversed and *venire facias de novo* awarded.