## J. N. LOGAN v. SUSAN EVA ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF YORK COUNTY.

Argued May 22, 1891—Decided October 5, 1891.

[To be reported.]

1. In ejectment by the sheriff's vendee of the legal title, against the person as whose property the land was sold, and the wife of the latter, the wife set up an equitable title in herself by a resulting trust. The only witnesses to prove the trust were the two defendants. Their testimony being sufficient, if believed, to establish the trust, it was properly submitted to the jury, although contradicted.

2. It is well settled that a purchaser of land is unaffected by a secret trust or equity unknown to him, and that he may pass title, untrammeled by the trust, to a person who has notice of it. A mortgagee is regarded in the law as such a purchaser, and he is protected from all secret equities and trusts of which he had no notice.

3. When a mortgagee of the legal title has taken the mortgage without notice of a resulting trust, a purchaser at a sheriff's sale on the mortgage will be protected by the mortgagee's want of notice, even though such purchaser was a surety on the bond secured by the mortgage, and cognizant at the time it was given of the facts raising the trust.

4. If a purchaser without notice could pass his title only to persons ignorant of the trust, the market value of his property would be depreciated and his enjoyment of it impaired by the restriction. Hence, his vendee's knowledge is not in the way of the transmission of the title unimpaired by the trust: Per Mr. Justice McCOLLUM.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 4 July Term 1891, Sup. Ct.; court below, No. 40 April Term 1890, C. P.

### Statement of Facts.

On February 6, 1890, John N. Logan commenced a proceeding before an alderman against Henry G. Eva, under §§ 105–118, act of June 16, 1836, P. L. 780, to obtain possession of a tract of land in Carroll township. By proceedings in the form prescribed by the statute, Susan Eva, wife of H. G. Eva, came upon the record as a claimant of title to the property, and the cause was certified by the alderman to the court below, where the plaintiff, Logan, declared in ejectment against Susan Eva and Henry G. Eva, her husband, the defendants pleading not guilty.

At the trial on November 12, 1890, the plaintiff showed title as follows: Deed for the premises in controversy from himself, as assignee for the benefit of creditors of Lemuel Ross, to Henry G. Eva, dated. May 4, 1885; mortgage, September 19, 1885, Henry G. Eva to V. K. Keesey, covering the same premises and securing $2,000; scire facias thereon, duly prosecuted to judgment; sheriff's sale under a writ of levari facias, on June 29, 1889, of the same property to the plaintiff for $1,500; and sheriff's deed to the plaintiff, acknowledged July 3, 1889. Having shown, further, the rental value of the property, the plaintiff rested.

The defendants testified, on behalf of themselves, in effect as follows: About 1875, Mrs. Eva received $1,775 from England, inherited by her as part of the estate of her deceased uncle. The drafts for the money were indorsed and deposited in the Dillsburg bank, of which the plaintiff was then cashier. About 1877, Mrs. Eva loaned $600 of this money to her sister Eliza Berryman, who used it in the purchase of a farm. The balance of her money was used by the husband, as was stated, in the purchase of such things as were needed.

Some time after, the Berryman farm was conveyed to H. G. Eva for the consideration of $1,200, the $600 loaned to Mrs. Berryman being a part of that sum. Mrs. Eva testified that she had intended that the title should be taken in her name. In the spring of 1885, Mr. and Mrs. Eva sold the Berryman farm for $2,400. After paying off all their debts they had $1,200, which was left in the hands of Mrs. Eva. She then sent her husband to buy the property in dispute from the plaintiff, as assignee of Ross, gave him the $1,200 to pay on the purchase money, and directed him to have the deed made in her

name.    Mr. Eva agreed to buy the property from the plaintiff
and paid the $1,200.

On May 4, 1885, the plaintiff, as assignee, executed a deed
for the property to H. G. Eva, but it was not delivered until
September 19, 1885, when the remainder of the purchase money
was paid.    To raise the amount required for that purpose,
application was made to Mr. V. K. Keesey for a loan.    He
agreed to lend Eva $2,000 upon a mortgage, provided the plaint-
iff would become his surety in the accompanying bond; and
such arrangement was carried out, and the entire transaction
closed.    Mr. Eva testified that he did not know, until after the
completion of the transaction, that the deed was made in his
own name, he having previously directed that it be made to
his wife.    He was contradicted by plaintiff upon each of these
assertions.    The plaintiff testified that he did not know that it
was Mrs. Eva's money that was paid on the property.    Other
evidence tended to show that he knew she had money.    There
was no evidence that Mr. Keesey knew of Mrs. Eva's having
any part or interest in the transaction.

At the close of the testimony, the court, LATIMER, P. J.,
charged the jury in part as follows:

It is a perfectly familiar principle of law that he who buys
on the strength of a perfect legal title, without notice of a re-
sulting trust, such as is attempted to be set up here, is entitled
to recover and obtain possession against the person asserting
such a trust, of which he had no knowledge.    It is an equally
familiar principle of law that when the wife establishes the fact
that she has a separate estate, and that that separate estate,
or the money belonging to her separate estate was used by her
husband in the purchase of real estate, though the husband
took the title in his own name, the law regards him as a trus-
tee for her to the extent that her money is shown to have gone
into the purchase, and that between a husband and wife such
a resulting trust can be asserted; and that it can be asserted
against a judgment creditor, or anybody but a purchaser for
value, without notice of the trust.

To establish such a claim in the wife as is set up here, it is
necessary for her to establish by clear, convincing and satis-
factory evidence two things : first, that she was the owner and

Charge of Court below.

possessor of a separate estate not derived in any way from or
through her husband; and, secondly, that that separate estate,
the moneys belonging to it, were used in the purchase of the
property.  She must trace the money from the time she re-
ceived it until the time she avers that it went into the property,
and she. must do that by clear, convincing, unequivocal evi-
dence; and the burden is on her to establish by that sort of
evidence her claim; and until she does so the party who dealt
on the strength of the legal title without notice of her claim is
not affected by any such claim as is presented here.  In this
case, she must show in addition, by a preponderance of evi-
dence, that at the time of the execution of this mortgage and
of this bond on which Mr. Logan became surety, he knew the
fact that the money belonging to her. separate estate was being
used in the purchase.

Now, these are the legal principles which govern the question
of the amount of evidence which must be adduced by a wife
claiming against her husband's creditors, or against the pur-
chaser under the mortgage given by her husband.

[John N. Logan stands in this case in a dual position; first,
as the purchaser of the mortgage on its face given by the hus-
band; and, secondly, in the position of a creditor of the hus-
band.  The bond and mortgage which were given when this
property was purchased by Mr. Eva are for the sum of two
thousand dollars.  Mr. Logan is on the bond as the surety.
He is liable to Mr. Keesey, the obligee in the bond, and the
mortgagee of the mortgage, for the amount of that debt.
He stands in this case as the surety of Henry G. Eva to Mr.
Keesey.  The written or oral evidence in this case shows that
when this property was sold at public sale, it was bought in
by Mr. Logan, I think, for one thousand five hundred dollars,
leaving a balance of five hundred dollars not realized on this
property, for which Mr. Logan is liable to Mr. Keesey; and he
is entitled to subrogation to all Mr. Keesey's rights on the bond
and on the mortgage, and stands to that extent as a creditor
of Henry G. Eva, to the extent that the purchase money real-
ized at the sheriff's sale fails to pay his debt; and, therefore,
as I said before, he is in the dual position; first, of the pur-
chaser under the mortgage given on its face by the husband,
and, secondly, as the creditor of the husband; and the wife is

Charge of Court below.

in the position claiming the property standing in her husband's name, against the creditor of her husband, and against the purchaser under the mortgage executed by him.] [2] . . . .

It is proper, before I come to that, to say that in all the transactions that have been developed in the evidence thus far, Mrs. Eva's name has not yet appeared, except that the drafts for this money sent from England were drawn to her order, and the money was sent to her. The deposits in the Dillsburg bank were made in the name of her husband, and the purchase of the Berryman property was made in her husband's name; the deed of the Berryman property having been made to him, and not to her. Prior to the sale of the Berryman property to Lehmer, the negotiations were undertaken between Mr. Eva and Mr. Logan for the purchase of the Lemuel Ross property. [Mr. Eva says, and Mrs. Eva says the same thing, that in these negotiations he was acting as her agent, and that she had instructed him to have the deed for the Ross property made in her name; and he says that he so informed Mr. Logan. About whether or not Mr. Logan was informed of this fact, if it be a fact, that the husband was acting as agent for the wife, and that the deed was to be made in her name, there is a precise contradiction of testimony between Henry G. Eva and John N. Logan.] [3] Henry G. Eva says that when he made the first payment of seven hundred and some dollars on the article of agreement, he informed Mr. Logan that the deed was to be made in his wife's name; but Mr. Logan says that he never did inform him that the deed was to be made to Mrs. Eva. There is a precise contradiction of testimony there which you will endeavor to reconcile, calling to your aid in the attempt to reconcile it, all the other evidence which we admitted in this case. . . . .

Now, thus far, from the evidence adduced in the case, as far as I have gone in reviewing it, you are to determine the first two questions involved in the case, viz., whether Mrs. Eva possessed a separate estate, of which there seems to be very little doubt. And, secondly, whether she has distinctly and clearly traced any portion of this separate estate to the purchase of the Lemuel Ross property? For, if she has failed in that, or to the extent that she has failed in that, her claim must fail. Another and very important element in her proof is, she must show by a preponderance of evidence that at the time of the execution of

this mortgage John N. Logan knew that her money was going into the purchase; for, if she has failed to show that, her claim entirely fails. . . . .

The plaintiff has asked me to charge you:

1. The evidence in this case is not so clear, explicit and unequivocal as to establish a resulting trust in the property in favor of Mrs. Eva; and it is therefore the duty of the court to direct the jury that their verdict must be for the plaintiff, who has established the legal title in himself.

Answer: I have already answered this point in my general charge. The plaintiff has established a legal title in himself, and he is entitled to recover, unless the defendant, Mrs. Eva, has shown by clear, explicit, unequivocal and convincing evidence that she had a resulting trust in the property; and that is a question which I will not take from the jury, but want you to determine.[4]

3. It is undisputed that John N. Logan purchased this land in controversy at a sheriff's sale of the same on a levari facias issued upon a judgment on a scire facias upon the mortgage given by Henry G. Eva to V. K. Keesey, Esq., to raise money with which to pay the balance of the purchase money; that said mortgage was duly recorded, and that V. K. Keesey had no knowledge or notice of this resulting trust. Under these circumstances, John N. Logan took the same title V. K. Keesey would have taken had he purchased the property at the sheriff's sale, free and discharged from the alleged resulting trust; and this without regard to whether he had actual notice or not.

Answer: This point is refused.[5]

4. Under the law and the evidence in this case, the verdict of the jury must be for the plaintiff.

Answer: This point is already answered in the general charge, and is refused.[6]

5. Where a purchaser with notice of a resulting trust buys real estate from a bona-fide purchaser who has no notice of such resulting trust, he is entitled to shield himself behind the title of his vendor.

Answer: As a legal proposition this is correct; but I do not think the question arises precisely in this case.[7]

—The jury returned a verdict in favor of the plaintiff for the premises in dispute, subject to the payment of $600 to Susan Eva, and with stay of execution until the payment thereof.

Opinion of Court below.

A rule for a new trial having been argued, the court, LATIMER, P. J., on March 2, 1891, filed an opinion in part as follows:

But the plaintiff contends that as Mr. Keesey, the mortgagee of Henry G. Eva, was without notice of any secret trust in the land for Mrs. Eva, and as the plaintiff bought the land at a sheriff's sale on Mr. Keesey's mortgage, he is protected by Mr. Keesey's want of notice even though he had notice himself. The doctrine that a purchaser for value without notice of a secret trust takes the property discharged thereof, and can convey it free of the trust to one who has notice, is too well established to require any citation of authority. Had the plaintiff been a stranger to the transaction of which Mr. Keesey's mortgage formed a part, he would have been in a position to invoke successfully the protection of this principle. He was not a stranger to the transaction, but a most active participant in it. He was the vendor of the defendant Henry G. Eva. The delivery of his deed to Eva, and the execution of Eva's mortgage to Mr. Keesey, were parts of the same transaction, occurring at the same time. The plaintiff negotiated the loan for Eva from Mr. Keesey, and procured Eva to execute the mortgage to Mr. Keesey, the loan being effected to enable Eva to pay plaintiff the balance of purchase money. Though not a party to the mortgage, he became Eva's surety on the bond which it was given to secure. Thus, he stands in a position to be subrogated to the rights of Mr. Keesey, both in the bond and the mortgage. Though not a party to the mortgage itself, he was a party to the very transaction of which it formed a part, the promoter of it and the receiver of its proceeds. Had he taken the mortgage to himself, with notice that the wife's money was being used in the purchase, he would of course have taken it subject to the trust, and I do not think he can protect himself by procuring the mortgage to be made to another without notice, whose title he subsequently acquires, and to all of whose rights he is entitled as surety to be subrogated. No case cited at the argument goes so far, and the doctrine would be a most dangerous one.

Of course, any other purchaser under Mr. Keesey's mortgage than the plaintiff would have been protected by Mr. Keesey's want of notice of the trust, and hence there is nothing in the suggestion that his security would be in any wise impaired.

Arguments.

—The rule for a new trial having been discharged, and judgment entered, the plaintiff took this appeal, assigning inter alia for error:

2, 3. The parts of the charge embraced in [ ]² ³

4–7. The answers to plaintiff's points.⁴ ᵗᵒ ⁷

*Mr. Henry C. Niles* (with him *Mr. W. F. Bay Stewart* and *Mr. George E. Neff*), for the appellant:

1. When real estate is held by a legal title, regular on its face, a bona-fide mortgagee is unaffected by a secret trust or equity of which he had no notice, and his vendee will take the same title without regard to his own notice of the trust: Lowther v. Carlton, 2 Atk. 242; Sweet v. Southcote, 2 Bro. Ch. 66; Bracken v. Miller, 4 W. & S. 102; Stewart v. Reed, 91 Pa. 287; Thompson v. Christie, 138 Pa. 230. The view of the court below, according to which the fact that the plaintiff was surety on the bond accompanying the mortgage in some manner changed his rights, is opposed to all the reasoning of the cases we have cited.

2. To establish a resulting trust, the evidence must be sufficient to satisfy the conscience of a chancellor: Wylie v. Mansley, 132 Pa. 65; Hess v. Calender, 120 Pa. 138; Reno v. Moss, 120 Pa. 49; Todd v. Campbell, 32 Pa. 250; Rowand v. Finney, 96 Pa. 192. Mrs. Eva and her husband were the only witnesses produced to establish the trust, in this instance, and their testimony was contradicted by every other circumstance of the case and by all their own proven acts. In any case, there must be more than the testimony of a single witness, and the husband and wife are together entitled to the weight of but one witness: Sower v. Weaver, 78 Pa. 443;* Bitner v. Boone, 128 Pa. 567; Yost v. Mensch, 141 Pa. 73.

*Mr. H. L. Fisher*, for the appellees:

The defendant's testimony comes up to the full measure of the requirements for the establishment of a resulting trust: Strimpfler v. Roberts, 18 Pa. 295; Bigley v. Jones, 114 Pa. 515; Rupp's App., 100 Pa. 531; Wormley's Est., 137 Pa. 101; Fillman v. Divers, 31 Pa. 432. On the question of the right of

---

* See Yost v. Mensch, 141 Pa. 84.

the plaintiff to be protected by Mr. Keesey's want of notice, we adopt as our argument the opinion of the court below.

OPINION, MR. JUSTICE McCOLLUM:

The substantial questions raised by this appeal are whether the evidence is sufficient to establish a resulting trust, and whether the appellant is protected by the mortgagee's want of notice of it. The instructions to the jury respecting the nature and kind of proof required to develop and successfully assert the trust, were unobjectionable and in harmony with our decisions on the subject. It is not with the principles announced in this connection that the appellant takes issue, but with the evidence, which he affirms is not full and clear enough, under the decisions, to support the appellees' claim. This objection necessitates an examination of the testimony to determine its adequacy. It shows that Mrs. Eva received, during coverture, from the estate of a deceased uncle in England, $1,775; that this was an inheritance, and constituted her separate estate; that she loaned six hundred dollars of it to her sister, which was afterwards paid in the purchase of the Berryman property; that she and her husband testified that one thousand two hundred dollars of it was used in that purchase; that on the sale of this property she received one thousand two hundred dollars of its proceeds, which she gave to her husband, with directions to invest in the property in dispute, and upon an understanding between them that she should have the title, and that the money was used in the purchase of the property as directed; but that the husband, unknown to her, took the deed of it in his own name. It shows, further, that the appellant knew that she had a separate estate, a portion of which was paid upon the property. We think the evidence was sufficient to justify a finding of all the facts essential to establish a resulting trust. It was contradicted, but the credibility of the witnesses was for the jury. It was ascertained by their verdict that the appellee had six hundred dollars in the land, and it seems very clear to us from the evidence that at least that amount of her separate estate was used in its purchase.

It is well settled that a purchaser of land is unaffected by a secret trust or equity unknown to him, and that he may pass title thereto, untrammeled by the trust, to a person who has

notice of it. " A mortgagee is regarded as a purchaser, and is protected from all secret equities and trusts of which he had no notice : Heister v. Fortner, 2 Binn. 40 ; Cover v. Black, 1 Barr 493. Notice to a purchaser at the sheriff's sale on the mortgage comes entirely too late, if the mortgagee had no notice when the mortgage was executed : " Martin v. Jackson, 27 Pa. 504. V. K. Keesey was the mortgagee of the land in dispute, and it is conceded that he had no notice of the alleged trust in favor of Mrs. Eva. At a sheriff's sale of the land on the Keesey mortgage, public notice of Mrs. Eva's claim was given, and the appellant became the purchaser. It is admitted that his knowledge of the trust derived from the notice given at the sale does not impair his title, but it is claimed that, inasmuch as he was surety in the bond secured by the mortgage, and familiar with the transaction in consummation of which the mortgage was executed, he cannot find shelter under Keesey's title. This claim was sustained in the court below, and we must give it our sanction or reverse the judgment.

It will be seen at the outset that the claim of the appellees makes the source of the appellant's knowledge of the trust, and the time he acquired it, factors in determining whether he has a title subject to the trust or independent of it. We cannot assent to this proposition. It must be borne in mind that the rule which protects a purchaser with notice, is not the outcome of a tender regard for him. It is the logical sequence of the doctrine that a bona-fide purchaser, without notice of a secret equity, takes a title unaffected by it. If such a purchaser could pass his title only to persons ignorant of the trust, the market value of his property would be depreciated by the restriction, and his enjoyment of it would be very much impaired. Hence the law declares that the knowledge of his vendee is not in the way of the transmission of his title, untrammeled by the trust. Nor can we see how the fact that the appellant was a surety in the bond secured by the mortgage can affect the question under consideration. The learned judge of the court below, in his opinion refusing a new trial, said, in substance, that the appellant's position as surety entitled him to subrogation to all the rights of the mortgagee. If so, why could he not purchase the mortgagee's title at the sheriff's sale ? In Stewart v. Reed, 91 Pa. 287, McClurkan bought the

property at sheriff's sale. He then sold it to Stewart, who, by agreement between them, received his deed for it directly from the sheriff. An attempt was made to impeach Stewart's title, 'on the ground that he made false representations which deterred certain parties from bidding at the sale, in consequence of which the land was sold for less than it was worth. It was held that as McClurkan was the purchaser, and had no knowledge of the fraud, his equity protected his vendee, this court saying: " In the absence of any collusion between McClurkan and Stewart, we are clearly of opinion that Stewart is entitled to take shelter behind McClurkan's equitable title." Certainly, if McClurkan's equity was sufficient to protect Stewart, notwithstanding his participation in a fraud connected with the sale, Keesey's title will sustain the appellant's contention, although he may have been cognizant of the facts which raised the resulting trust. The fifth, sixth, and seventh specifications of error are sustained, and the remaining specifications are dismissed.

> The judgment is reversed, and a venire facias de novo awarded.