# Roush, Appellant, v. Herbick.

*Sheriff's sale—Possession of property—Parties—Fraud—Judicial sale—Mortgage—Tenant for years—Landlord and tenant—Act of April 20, 1905, P. L. 239.*

1. In proceedings to obtain possession of property purchased at sheriff's sale, defendants and terre-tenants, who have been served with process in the original suit, cannot set up anything which would have been available to them as a defense to that suit, even though they did not know the facts until after judgment was entered therein.

2. A purchaser at sheriff's sale under judgment on foreclosure of a mortgage which was overdue, and which was recorded prior to the date of the lease, can recover possession from the tenant of the property, even though the purchaser knew the lease would not expire until after the sale, and that the mortgagee began the foreclosure proceedings at the request of the owner.

3. No wrong can be attributed to one who makes an agreement which can be and is carried out by lawful means, even though the other party thereto has a wrong purpose in making it.

4. Where one has a legal right to do a given thing the law will not inquire into his motive in doing it.

5. If plaintiff in a judicial proceeding acts in good faith and without collusion, a purchaser at a judicial sale thereunder will obtain a good title, even though defendant was guilty of fraud.

6. Collusive fraud between plaintiff and defendant, and knowledge thereof or sufficient notice to put the purchaser upon inquiry, are essential in order to affect a title derived by a judicial sale, or any of the legal rights growing thereout.

7. Circumstances which later appear to be suspicious are not alone sufficient to make unlawful an agreement which in itself is legal and may be carried out by lawful means.

8. Under the Act of April 20, 1905, P. L. 239, a tenant for years cannot, in the absence of collusive fraud, defeat the right of a purchaser at sheriff's sale on foreclosure of a mortgage, or those claiming title under him, unless the lease is dated prior to the recording of the mortgage.

Argued October 18, 1920. Appeal, No. 173, Oct. T., 1920, by plaintiff, from order of C. P. Allegheny Co., July T., 1919, No. 216, refusing judgment for plaintiff

n. o. v., in case of Joseph C. Roush v. Nicholas Herbrick
and Theo. H. Dœhla, trading as Penn Baking Co., and
Elevator Construction Co. Before BROWN, C. J., MOSCH-
ZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.
Reversed.

Issue in proceedings by a purchaser at sheriff's sale
of real estate, to obtain possession. Before DREW, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant. Plaintiff ap-
pealed.

*Error assigned,* inter alia, was refusal of judgment n.
o. v., quoting record.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* with
him *Geo. H. Rankin,* for appellant, cited: Barry v. Hill,
166 Pa. 344; Watson v. Watson, 198 Pa. 234; McCloskey
v. McCloskey, 205 Pa. 491; Freeman v. Lafferty, 207 Pa.
32; Hostetter's Petition, 57 Pa. Superior Ct. 601; Hor-
vath v. Rull, 27 Pa. Dist. R. 438; Reisinger v. Coal Co.,
262 Pa. 530.

*John A. Metz,* for appellees.—The case of Fellows v.
Loomis, 170 Pa. 415, is directly in point.

OPINION BY MR. JUSTICE SIMPSON, December 31, 1920:

When Mary Joyce died she was the owner of two prop-
erties, one in Braddock, Pennsylvania, which was bring-
ing in a good rental and was subject to a mortgage of
$30,000, held by the Union National Bank of Pittsburgh;
and the other Nos. 305-309 Penn avenue in the City of
Pittsburgh, which was subject to a first mortgage of
$60,000 held by the Fidelity Trust Company, and a sec-
ond of $30,000 held by said Union National Bank. The
two mortgages of $30,000 were security for a single debt
of that amount owing by her to the bank.

All the mortgages were overdue and the interest there-

on was in arrears, as was also the taxes on the properties. The bank demanded payment of its indebtedness, and, this not having been made, foreclosed the mortgage on the Braddock property. In order to protect the estate, Mrs. Joyce's executrix thereupon endeavored to sell the Penn avenue property, and plaintiff agreed to purchase it for $105,000, $5,000 of which he paid at the date of the agreement, $60,000 was to be paid by the assumption of the first mortgage of that amount, and the balance of $40,000 on April 1, 1919, when title was to be made to him. It was further provided that possession was to be given to him "on or before April 30, 1919, or as soon before that date as the tenants vacate the premises or any part thereof after delivery of deed."

Without a decree of the orphans' court the executrix could not convey the Penn avenue property to plaintiff, for the will did not work a conversion, and suits pending against the estate preserved the lien of decedent's debts. There were also judgments against certain of the heirs, and the amounts necessary to pay the mortgages, taxes and arrearages of interest, left but little margin over the purchase price. An application to the orphans' court for authority to sell at private sale, would probably have resulted in a loss of the Braddock property, which was to be sold by the sheriff within a week thereafter, and possibly in an inability to comply with the conditions of the sale to plaintiff; consequences which would have been disastrous to the estate. Her counsel concluded, therefore, that an agreement with the bank to stay proceedings on the Braddock mortgage and to foreclose the Penn avenue mortgage and sell this property by the sheriff, was the only possible way out of the difficulty; and hence took up the matter with the bank, resulting in an agreement by which, in consideration of the estate paying to it the $5,000 received from plaintiff, it consented to the plan suggested; it being understood that title was to be made to plaintiff, as purchaser as aforesaid, upon his paying the remainder of

the price agreed upon, out of which the indebtedness to the bank, the expenses of the proceedings and the debts against the property (excluding the principal of the $60,000 mortgage), were first to be paid, and if there was any balance remaining, it was to go to the Joyce estate. So far as appears, plaintiff had nothing to do with the making of this agreement and did not know of it until about the date of the sheriff's sale provided for thereby.

Defendants were made terre-tenants in the foreclosure proceedings against the Penn avenue property, which followed as a result of the agreement, and were served with the scire facias, but made no defense thereto. In due course the bank recovered judgment, the property was sold by the sheriff on a levari facias, was bought in by it and title taken in the name of Charles Paden, its cashier. In addition to the $5,000 already paid by plaintiff, he paid the balance of the amount bid at the sheriff's sale, and later, upon receiving a deed from Paden, paid the remainder of the $40,000 agreed upon, which was distributed as arranged, the Joyce estate getting but $2,-579.99 thereof.

When plaintiff demanded possession from defendants they refused to deliver it, alleging the proceedings were a scheme to cheat them out of their leasehold, and hence did not affect their right of possession. He thereupon filed his petition under the Act of April 20, 1905, P. L. 239; defendants answered, an issue was awarded, the case tried and a verdict rendered for defendants. This was followed by a motion for judgment for plaintiff non obstante veredicto, which being refused and judgment entered on the verdict, plaintiff took this appeal.

As defendants were served with the writ of scire facias, the judgment thereon precludes them from now setting up any defense which might have been made thereto (Nace v. Hollenback, 1 S. & R. 540; Colley v. Latimer, 5 S. & R. 211; Kennedy v. Baker, 159 Pa. 146; Taylor v. Beekley, 211 Pa. 606); and this is so even

though they did not then know such a defense existed (Leech v. Armitage, 2 Dallas 125; Kilheffer v. Herr, 17 S. & R. 319; Bell v. Allegheny County, 184 Pa. 296, 303), the remedy in that event being a rule to open the judgment. Evidently they recognize this to be so, for they aver in their paper-book here that "if all the facts contained in the answer to the petition [for possession] had been set up in an affidavit of defense to the sci. fa., the court would very promptly and properly, on motion for judgment for want of a sufficient affidavit of defense, have said: 'Those facts may all be true, but they are not sufficient to prevent judgment.' Defendants therefore allege as their reasons for defeating plaintiff's claim for possession (1) that the transaction, in so far as the executrix and the purchaser are concerned, was a legal fraud; and (2) the purchase by Paden was in trust for the Joyce estate, which could not have disturbed their possession, and hence plaintiff, as purchaser from him as such trustee, is likewise unable so to do."

There were three parties to the transfer of title, the bank, plaintiff and the Joyce estate. It was stated by the court below, and admitted by defendants in this court, that none of those who acted for the bank had been guilty of any fraud in regard to the making or carrying out of the agreement. It is equally clear plaintiff also was innocent of fraud; indeed the only claim made is that he was guilty of a legal fraud, but how this could be is not pointed out. Assuming the Joyce estate desired the foreclosure for the purpose of invalidating the lease, there is no evidence that plaintiff, or any one acting for him, knew or had any reason to believe this to be so. All the evidence is to the effect that this was never spoken of in the course of the proceedings; if it existed it was an undisclosed purpose, and the executrix and her counsel deny that it existed. The only reason given for obtaining title through the foreclosure proceedings, and even this not to plaintiff, was that it was necessary so to do in order to discharge the lien of debts of the

estate not of record and the judgments against certain
of the heirs. It is said plaintiff's counsel was handed
the lease to defendants (whether before or after the
sheriff's sale is disputed) and thereby knew it had not
expired; but this does not constitute fraud or anything
akin to it. Assuming he thereby knew of defendant's
right of possession, he was not obliged to suppose there
was or would be any attempt to fraudulently dispossess
them. He had the right to bargain for possession, and
a knowledge of the duration of their lease would not
make him a party to the fraud, if there was one. So far as
he was concerned he was simply making a lawful agree-
ment which could be carried out by lawful means, and
no wrong can be imputed to him under such circum-
stances: Damon v. Bache, 55 Pa. 67; Miles v. Lewis,
115 Pa. 580, 587. He had the right to assume the estate
had made or would make the necessary arrangements,
not illegal or fraudulent, to deliver possession of the
property; was not required to believe it had been or
would be guilty of any wrongdoing, even if the fact be
so, especially as he was not to get possession until April
30, 1919, unless defendants chose to sooner deliver it;
and, if he was affected with notice of the provisions of
defendants' lease, he knew it expressly declared "that
in case said building is sold......said lessees will de-
liver up quiet and peaceable possession......[in con-
sideration of a sum agreed upon] on any succeeding first
day of May, during the term of this lease, providing said
lessees received four months' notice in writing from
said lessor or her agents." It is clear, therefore, that the
utmost to which the argument of defendants can by any
possibility be carried, is that, at some stage of the pro-
ceedings, after plaintiff's rights and liabilities were
fixed, there was brought home to him a knowledge of
circumstances, which might or might not be suspicious,
and which if investigated might have led to the conclu-
sion the estate intended to wrong defendants; but this
is not sufficient to establish fraud upon his part (Mead

v. Conroe, 113 Pa. 220; Jones v. Lewis, 148 Pa. 234; Hagy et al. v. Poike, 160 Pa. 522; Sawyer v. Pittsburgh, 217 Pa. 17) especially where, as here, all he would probably have learned was that the purpose the estate had in view was an innocent one.

It follows, therefore, even though those acting for the estate intended to wrong defendants, there was no collusive fraud, and this is essential in order to affect a judicial sale or any of the legal rights growing out of it: Postens v. Postens, 3 W. & S. 127; Dougherty's Est., 9 W. & S. 189; Sheetz v. Hanbest, 81 Pa. 100; Morton v. Weaver, 99 Pa. 47; Bell v. Throop, 140 Pa. 641; Page v. Williamsport Suspender Co., 191 Pa. 511; Gould v. Randal, 232 Pa. 612.

This brings us to the second point made by appellees, upon which they lay the most stress, viz: That plaintiff knew the purchase at sheriff's sale was really made for the Joyce estate, and the title held by Paden was in trust for it, and hence plaintiff, who obtained title not from the sheriff directly but from Paden, had no higher right than the estate would have had if the deed had been made to it, and as its title would have been subject to defendants' lease, his is also; and hence they cannot be ousted from possession of the property. This contention fails on its facts, even assuming the conclusion stated would flow therefrom, if true. Mr. Paden did not purchase for the estate, but primarily to protect the bank, and, after the bank was paid, his duty was not to convey to the estate, but to plaintiff, if the latter paid the balance of the purchase price. The agreement made by the bank was entirely proper, and if its claim had not been paid in full, it could have held the title and ousted defendants and every one else claiming under the estate: Damon v. Bache, 55 Pa. 67; Mead v. Conroe, 113 Pa. 220; Miles v. Lewis, 115 Pa. 580, 587; Salsbury v. Black, 119 Pa. 200. These cases point out, as do also Jenkins v. Fowler, 24 Pa. 308; Vitagraph Co. v. Swaab, 248 Pa. 478, and Scott v. Pittsburgh, 266 Pa. 52, that, as the

bank had the legal right to do that which it did, the law will not inquire into its motives,—nullus videtur dolo facere qui suo jure utitur; and hence its agreement to convey on payment of its debt is a valid agreement which no one can question. It is true plaintiff was not a party thereto and the estate was, and thereby the bank agreed "to transfer to whomsoever the Joyce heirs directed"; but it would have been a fraud for them to direct a conveyance to any one else than plaintiff, who had paid the entire purchase money to the sheriff, whereby a resulting trust arose in his favor (Casciola v. Donatelli, 218 Pa. 624)—subject, of course to his payment of the balance of the purchase price—and was entitled to have the deed made to him whether or not the heirs consented thereto, the latter's interest not being in the property as such, but only in the small surplus remaining after the amounts owing to the bank and by the property had been fully paid. In the property itself they had no interest, unless plaintiff failed to pay the purchase price agreed upon, and because thereof they were compelled to pay the full amount due to the bank. It follows, therefore, that plaintiff stepped into the shoes of Paden, and defendants, having no defense against the title in him, can have none as against plaintiff: Stewart v. Reed, 91 Pa. 287; Logan v. Eva, 144 Pa. 312; Reisinger v. Garrett Smokeless Coal Co., 262 Pa. 530. Under the facts stated, if plaintiff and the heirs had each claimed the equitable title to the property, and they had interpleaded as to their respective rights, because of a bill in equity filed by Paden requiring them so to do, the decree would necessarily have been in plaintiff's favor; and to this extent only is Fellows v. Loomis, 170 Pa. 415, relied upon by appellees, a relevant authority here.

The same conclusion is reached from another standpoint. The Act of 1905, under which this issue arose, authorizes "purchasers at judicial sales of real estate in this Commonwealth, and grantees" thereof to institute

the proceedings, and by section 14 provides that "The right of possession of a tenant for years shall be deemed paramount to that of a purchaser at a judicial sale if, and only if, the letting to him shall precede in point of date .....the recording or registering of the mortgage..... through which by legal proceedings the purchaser derives title." Here the foreclosed mortgage was recorded July 21, 1915, and defendants' lease is dated September 1, 1916; yet they are undertaking to set up a right of possession which the act says they cannot retain under such circumstances.

If those acting for the bank or plaintiff had been guilty of collusive fraud another question would arise, but as shown above they were not.

At the trial it was agreed that if plaintiff was entitled to judgment, the damages for detention, to be assessed under section 12 of the act, should be at the rate of $166.67 per month, the amount specified in defendants' lease from the Joyce estate. This enables us to end the litigation by directing the assessment of damages accordingly.

The judgment of the court below is reversed, and judgment is here entered for plaintiff non obstante veredicto, that he recover from defendants possession of the property described in the petition in this case, and damages for its wrongful detention at the rate of $166.67 per month from April 30, 1919, to the date of delivery of possession, said damages to be assessed by the court below as in other cases.