# Lefever v. Armstrong.

*Lease—Leasehold estate—Chattel—Judgment—Lien—Execution.*

The interest of the owner of a leasehold, while it is an interest in land, is a chattel real in possession, and is not subject to the lien of a judgment, but is subject to levy and sale under a fieri facias.

When an execution on a judgment against a lessee comes to the hands of a sheriff, it becomes a lien on whatever interest, legal or equitable, the

Syllabus—Statement of Facts. [15 Pa. Superior Ct.

lessee has in the leasehold estate, and a sale by the sheriff conveys to the purchaser all of the title of the lessee as of the time of the levy. No subsequent act of the lessee, or of an assignee or mortgagee of the leasehold claiming under the lessee, can enlarge or diminish the title as it stood at that time.

*Leasehold estate—Mortgage—Recording acts—Mining leasehold.*

A mining lease from the owner of the fee, and the assignment of an interest therein, are recordable instruments under the acts of assembly, and the leasehold is, under the Act of April 27, 1855, P. L. 368, subject to mortgage.

*Mortgage—Unrecorded mortgage—Notice.*

An unrecorded mortgage is good against the mortgagor or a judgment creditor with notice before the debt is contracted; but where the debt of the judgment creditor antedates the debt secured by the mortgage, and the judgment creditor has no notice of the mortgage at the time he issues his execution, and the mortgage is, in fact, not recorded until after the execution is issued, although before the sheriff's sale, the execution creditor will take in preference to the mortgagee; and a notice given at the time of the sheriff's sale will not be sufficient to divest the lien of the fieri facias which had attached before the mortgage had been recorded.

Leasehold mortgages are wholly dependent on the recording acts for their validity as liens, and there must be a compliance with their provisions to entitle the mortgagee to displace an execution creditor.

Argued May 15, 1900. Appeal, No. 212, April T., 1900, by defendants, from judgment of C. P. Butler Co., Sept. T., 1899, No. 25, on trial by the court without a jury, in case of Henry Lefever v. J. T. Armstrong and J. S. Campbell. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Ejectment for a one-fourth interest in a mining lease of land in Marion township.

The case was tried by GREER, P. J., without a jury, under the Act of April 22, 1874.

The plaintiff claimed under a mortgage from P. S. Hovis executed on December 1, 1897, and recorded on December 27, 1897. The defendants claimed as sheriff's vendees under an execution issued on December 22, 1897, on a judgment entered on the same day in favor of O. B. Cross against P. S. Hovis. The facts are stated in detail in the opinion of the Superior Court.

The court below entered judgment in favor of the plaintiffs

"for the land described in the writ with six cents damages and costs, to be released upon payment by the defendants to the plaintiff of $500 and interest, less the amount of money received from sale of oil on the pipe line order of Hovis."

*Error assigned* was the judgment of the court.

*T. C. Campbell*, with him *W. D. Brandon*, for appellants.— An assignment to secure a debt is but a mortgage without regard to form: Kinports v. Boynton, 120 Pa. 306; Russell's App., 15 Pa. 319; Fessler's App., 75 Pa. 483; Fredericks v. Corcoran, 100 Pa. 413.

And it was well recorded, though in the deed book: Farabee v. McKerrihan, 172 Pa. 234.

While an unrecorded mortgage is good as against a subsequent purchaser or mortgagee (a mortgagee being a purchaser as well as a creditor), if there is notice of the mortgage, yet there are not wanting authorities to show that notice will not supply the want of record where subsequent judgments are concerned: Muse v. Letterman, 13 S. & R. 167; Hulings v. Guthrie, 4 Pa. 123; Uhler v. Hutchinson, 23 Pa. 110; Hibberd v. Bovier, 1 Grant, 266; Bismark Bldg. & Loan Assn. v. Bolster, 92 Pa. 123.

The judgment creditor must be visited with notice of the unrecorded mortgage at the time not only when his judgment was entered, but also when his debt was contracted: Lahr's App., 90 Pa. 507; Jaques v. Weeks, 7 Watts, 261; Uhler v. Hutchinson, 23 Pa. 110; Manufacturers', etc., Bank v. Bank of Penna., 7 W. & S. 335; Britton's App., 45 Pa. 172; Nice's App., 54 Pa. 200; McLaughlin v. Ihmsen, 85 Pa. 364; Kinports v. Boynton, 120 Pa. 306.

The burden of proof rests upon the holder of an unrecorded mortgage to prove notice: Phillipsburg Savings Bank's App. 10 W. N. C. 265.

If Cross, the execution creditor, was not bound by notice of the unrecorded mortgage, then neither was Armstrong, the purchaser at sheriff's sale, although notice of the mortgage was read when the property was offered by the sheriff: Jaques v. Weeks, 7 Watts, 261; Uhler v. Hutchinson, 23 Pa. 110; Hibberd v. Bovier, 1 Grant, 266; Loomis's App., 22 Pa. 312.

The rule as to change of possession of a chattel real where mortgaged or pledged, necessary to visit a creditor with notice, is stated as follows : There must be a corresponding change of possession. But if such change of the possession be impracticable, it must be dispensed with, for the law never requires that which is impossible: Luckenbach v. Brickenstein, 5 W. & S. 149; Buckley v. Duff, 114 Pa. 602; Ditman v. Raule, 124 Pa. 225.

Under the circumstances, the question whether there was a sufficient change of possession from Hovis to Lefever, is a question of law and not of fact: Corcoran v. Mutual Life Ins. Co. of N. Y., 183 Pa. 443.

*Joseph B. Bredin*, with him *Clarence Walker*, for appellee.— The act of 1820 has no relation to mortgages of leaseholds, nor have any other acts which relate exclusively to mortgages of " real estate : " Bismark Bldg. & Loan Assn. v. Bolster, 92 Pa. 123; Fry v. Miller, 45 Pa. 441.

Leases for years, under twenty-one year terms, accompanied with possession, need not be recorded, nor assignments of such : Williams v. Downing, 18 Pa. 60.

In an assignment of an interest in a leasehold estate as collateral security, it is not material that the instrument is not made and recorded in compliance with section 1 of the Act of May 13, 1876, P. L. 160: Brown v. Beecher, 120 Pa. 590.

The Acts of April 27, 1855, P. L. 368; April 3, 1868, P. L. 57, and May 13, 1876, P. L. 160, are remedial and to be liberally construed, and they apply to all leasehold estates for a term of years: Hilton's App., 116 Pa. 351.

The common-law lien is the right to detain a specific chattel until the pledgee or mortgagee is paid his loan. Statutes in derogation of the common law, and contrary to the general policy of the public, are to be strictly construed: Esterley's App., 54 Pa. 192 ; Eichleay v. Wilson, 8 Pa. Superior Ct. 14–17.

OPINION BY ORLADY, J., January 22, 1901:

From the facts found by the court below it appears that prior to December 1, 1897, P. S. Hovis was the owner of an undivided one-fourth interest in a leasehold estate and in the machinery on the land described in the præcip, the other owners being John S. Campbell, James T. Armstrong and Nelson P. Duncan.

On December 1, 1897, Hovis executed and delivered to Henry Lefever, the plaintiff, an assignment of his interest in the lease and machinery as a collateral security for a note of $500, on which Hovis received the money, and which was paid by Lefever before this suit was brought. This assignment was duly acknowledged and recorded in deed book No. 176, page 221, on December 27, 1897. To effectuate the assignment, a transfer order was prepared by Hovis and Lefever to secure a credit to Lefever of the oil run, from this interest, through the pipe lines of the National Transit Company, but it was so improperly signed by the parties as to be a nullity, and a new one of the same date (December 1, 1897) was prepared and signed though not delivered to the pipe line company until December 29, following. The oil received from this interest was credited to Lefever from December 1, 1897, to February 9, 1898. Prior to the transaction with Lefever, Hovis was indebted to O. V. Cross by his note, dated September 6, 1897, on which a judgment was entered against Hovis on December 22, and a writ of fieri facias issued thereon. That same day it was delivered to the sheriff, who levied upon the interest of Hovis in the leasehold, machinery and appliances, and on February 9, 1898, sold them to James T. Armstrong, a cotenant of Hovis, and gave him a bill of sale therefor. Prior to December 1, Hovis had been the active manager of the business, and up to the time of the sheriff's sale there had been no change in the manner of conducting it.

When the interest of Hovis was offered for sale by the sheriff, a notice was given that purchasers would buy the interest of Hovis, subject to the rights of the plaintiff in the property and subject to the amount of the note of $500, with interest and costs. Immediately after the sale the pipe line company transferred the credit of oil in its pipes to the defendants, and the plaintiff brought this ejectment to recover the possession of the interest in the lease and machinery. The court below found for the plaintiff, " the land described in the writ " to be released upon payment by the defendants to the plaintiff of the amount of the Hovis note less the amount received from the pipe line company, and the defendants bring this appeal.

The interest of Hovis in the leasehold was interest in land, a chattel real in possession, but none the less a chattel. It was

not subject to the lien of a judgment but was subject to levy and sale under a fieri facias : Sterling v. Commonwealth, 2 Grant 162; Titusville Novelty Works' Appeal, 77 Pa. 103 ; Duke v. Hague, 107 Pa. 57 ; Kile v. Giebner, 114 Pa. 381; Brown v. Beecher, 120 Pa. 590 ; Kinports v. Boynton, 120 Pa. 306.

When the execution on the Cross judgment came to the hands of the sheriff, it became a lien on whatever interest, legal or equitable, Hovis had in the leasehold estate, and the sale by the sheriff conveyed to the purchaser all the title of Hovis as of the time of the levy. No subsequent act of Hovis or of Lefever could enlarge or diminish the title as it stood at that time.

The lease from the owner of the fee to Hovis, and the assignment of the one-fourth interest therein by Hovis to Lefever, were recordable instruments under the acts of assembly, and the property described was subject to mortgage : Hilton's Appeal, 116 Pa. 351. The purpose of the Act of April 27, 1855, P. L. 368, as expressed in the title is " to amend certain defects of the law for the more just and safe transmission and secure enjoyment of real and personal estate." The 8th section, which authorized the mortgaging of this leasehold interest, provides that it shall be " with the same effect as to the lessee's interest and title as in the case of mortgaging of a freehold interest and title as to lien, notice, evidence and priority of payment." In which case it was held that the words " other premises " embraced a leasehold estate in a city lot for a term of years. The word " premises " as applied to realty, means " lands and tenements," and there appears to be no good reason why a more restricted meaning should be given to it in the act under consideration. Any other construction would exclude from the operation of the act valuable leaseholds which were no doubt intended to be embraced, and thus fail to effectuate the general purpose expressed in the title of the act and recognized in subsequent legislation on the same subject. But even though unrecorded, the mortgage is good against the mortgagor or a judgment creditor with notice before the debt is contracted : McLaughlin v. Ihmsen, 85 Pa. 364.

In this case the debt of Cross antedated that of Lefever, and it is expressly found by the court below that there was no evidence to show that Cross had notice of the Lefever mortgage at the time he issued his execution against Hovis ; nor could

Cross possibly have had notice of the leasehold mortgage when his debt was contracted, as at that time the mortgage was not in existence nor its debt contracted.

Under the Act of March 28, 1820, 7 Sm. L. 303, no mortgage, except for purchase money, is a lien until recorded or left for record: Foster's Appeal, 3 Pa. 79; McKerriham's Appeal, 172 Pa. 234. These recording acts were enacted for the protection of mortgagees, but the protection secured to them by the statutes may be lost through a neglect of their provisions, and after having neglected to place his mortgage on record until December 27, Lefever can claim under it from that date only as against Cross, who had before that time issued his execution without notice of the existence of the mortgage: Adams's Appeal, 1 P. & W. 447; Nice's Appeal, 54 Pa. 200; Parke v. Neeley, 90 Pa. 52; McKerriham's Appeal, supra. Leasehold mortgages are wholly dependent on the recording acts for their validity as liens, and there must be a compliance with their provisions to entitle the mortgagee to displace an execution creditor.

A purchaser of real estate at a sheriff's sale is protected against all unrecorded conveyances of the defendant in the execution of which he did not have notice. He is bound to look to the possession when the sale is made and to the records, and if neither of these furnish any evidence that the defendant has parted with his interest, he is not required to look further: Stewart v. Freeman, 22 Pa. 120; Davey v. Ruffell, 162 Pa. 443; Hulings v. Guthrie, 4 Pa. 123.

In Uhler v. Hutchinson, 23 Pa. 110, the question was as to whether the holder of an unrecorded mortgage, by giving notice of its existence at a sheriff's sale upon a judgment, could bind the estate mortgaged in the hands of a purchaser at such sale when the judgment creditor had no notice of the mortgage at the time his judgment was entered; the Supreme Court held that he could not do so. It would be contrary to reason that he should have this advantage over the judgment creditor when he neglected to follow the statutory requirements. "The law is said to favor the vigilant, but to prefer the unrecorded mortgage creditor, the eleventh hour man would not only be given his penny, but, in order that it may be bestowed upon him, the early laborer is turned away penniless."

The reasoning in these cases applies with equal force to the

one before us. Here, as in cases of real estate, the mortgage becomes a lien on the leasehold estate from the time it is left for record. The lien of the fieri facias attaches when it comes to the hands of a sheriff, and when the fieri facias is issued before the mortgage is left for record, or before possession of the property is taken under it and is legally pursued to a sheriff's sale, the title to the property passes to the sheriff's vendee relieved and discharged of the lien of the mortgage even though it is entered before the sheriff's sale but subsequent to the delivery of the fieri facias. The notice given at the time of the sheriff's sale was not sufficient to divest the lien of the fieri facias which had attached five days before the mortgage had been recorded. To give it the validity of a mortgage by a subsequent notice would defeat the purposes of the recording acts, which were intended to quiet titles and not to make them uncertain.

The object of recording a mortgage is to give notice to third persons; between the parties thereto a mortgage is just as effectual for all purposes without recording as with it: Jones on Mortgages, sec. 467; Bacon v. Northwestern Mut. Life Ins. Co., 131 U. S. 258. The same object requires in sales of personal property that the possession shall be visibly changed at the time of the transfer of title. When the subject of a mortgage is an undivided interest in a leasehold estate, and it is incapable of a manual transfer, the law regards the placing on record of the mortgage as an equivalent and substitute for the change of possession. In this case nothing was done by Lefever to notify any person of his mortgage claim. The ineffectual attempt to secure the oil in the pipe line was postponed until December 27; no notice of any kind was given to any person, nor was an attempt made to place Lefever in the relation of owner of this interest, nor to assert dominion over the property until five days after Cross issued his execution. Lefever appreciated the necessity of doing something in the way of securing his title to the property, but in following the course marked out by the statute, he delayed long enough to permit another and more vigilant creditor to outstrip him in securing his debt.

The case of Bismark Bldg. & Loan Assn. v. Bolster, 92 Pa. 123, on which the appellee relies, is not in conflict with this one. The opinion in that case stating, " Whether a mortgage of a lease-

hold, duly recorded, not accompanied by possession, is good against execution creditors is not a question in this case. Possibly such a mortgage is valid under the act of 1715, the record standing for possession." The case suggested by Judge TRUN-KEY, in that opinion is practically before us. It is not necessary to pass on the right of Lefever in the distribution of the fund arising from the sheriff's sale. He does not raise that question, and his claim here is for the property as mortgaged by him.

The ninth and eleventh assignments of error are sustained, and the judgment of the court below is reversed, and judgment is now entered in favor of the defendants.