## Wilford, Trustee, v. White.

*Stevens & Lee,* for plaintiff; *Emanuel Weiss,* for defendant.

SHANAMAN, J., February 24, 1931.—

1. Max D. Wasserzweig, whose name was subsequently changed to Herman Julius White, became the owner, on July 2, 1917, of premises No. 311 North Fourth Street, Reading, Pennsylvania.

2. On May 22, 1923, he mortgaged the property to the Berks County Trust Company for $7500.

3. On June 13, 1923, he and his wife Hannah deeded the property to Rose Ehrens.

4. On November 3, 1924, the Reading National Bank entered judgment against Rose Ehrens for $900.

470

5. On August 22, 1927, Rose Ehrens mortgaged the property to the First National Bank of Bangor for $8000.

6. On October 1, 1927, Rose Ehrens and her husband, H. J. Ehrens, leased the property to Mrs. Hannah White for five years expiring September 30, 1932, for the monthly rental of $10. Lessee took immediate possession, and has continuously retained it.

7. On December 1, 1927, Herman J. White obtained judgment against Rose Ehrens for $976.50.

8. Execution was issued on the last-named judgment, and on April 6, 1929, the sheriff, at judicial sale in pursuance of the said execution, sold the premises to H. H. Wilford, trustee.

H. H. Wilford testified that he is trustee for the First National Bank of Bangor. The record shows that there was no attornment after the sale. The purchaser at the sheriff's sale and present plaintiff brought proceedings before us to oust the tenant and obtain possession of the premises, under the Act of April 20, 1905, P. L. 239. That petition we dismissed on the ground that section fourteen of the act provided that in a proceeding brought thereunder, tenant's right of possession was paramount to that of the purchaser at the sheriff's sale: White v. Ehrens, 14 D. & C. 151. The purchaser then brought the present suit in ejectment against Mrs. White, the tenant. At the trial, we gave binding directions for the plaintiff, and reserved the legal points for decision. The tenant filed a motion for judgment *non obstante veredicto*, which is before us for adjudication.

Defendant's first point is that the plaintiff failed to show that the defendant was in possession when suit was brought. Such possession must indeed be shown: Sautter v. Rowland, 285 Pa. 212, 216; Kreamer v. Voneida, 213 Pa. 74, 78; Yost v. Brown, 126 Pa. 92, 95; McIntire v. Wing, 113 Pa. 67. However, defendant admitted in her "plea, abstract, and answer" that she was presently and had been continuously in possession from the time of the execution of the lease. This admission was not read into the record, nor was the sheriff's sworn return of service offered. At the close of plaintiff's case, defendant moved for a nonsuit on the ground that plaintiff had failed to show that defendant was in possession at the time the suit was filed. The court refused the motion, and at the close of defendant's case asked counsel for defendant whether, in view of defendant's motion for a nonsuit, he was making any issue as to defendant's possession or non-possession. Counsel replied that he was not making an issue of that because defendant's plea admitted possession, but that he had raised the point because the plaintiff had failed to offer the admission in evidence. Under the circumstances, we may, and do, consider counsel's reply as tantamount to an admission of record, or at least to a waiver of record of that ground of defense.

The real point in the case is whether or not the lease falls as against the purchaser. It was early decided that the purchaser at sheriff's sale, under proceedings on encumbrance prior to the lease, has a right to affirm or disaffirm. If he disaffirms, lessee can sue lessor on covenant for quiet enjoyment, or, if sued by lessor for rentals, can plead the sheriff's sale and the disaffirmance of the lease: Market Co. v. Lutz, 4 Phila. 322. "The lease between Ege and Perdue was dated the 25th of February 1837, but the judgment on which the land was sold was entered in April 1820. The purchaser, therefore, had the right to affirm or disaffirm the lease:" Farmers and Mechanics' Bank v. Ege, 9 Watts 436, 439. The present case is very different, because the lease under present consideration was prior in date to the judgment on which execution was had. "The purchaser at sheriff's sale . . .

buys at his own risk, and is bound to know the nature and extent of the interest or estate which the defendant in the execution has in the land; the maxim of *caveat emptor* applies with full force to him:" Young *v.* Algeo, 3 Watts 223, 229. "The rule of *caveat emptor* applies with such strictness to a purchaser at sheriff's sale, that he is bound to pay the purchase-money although he may discover that the title is altogether worthless. As the law casts upon him the burthen of ascertaining the nature of the title before he bids at the sale, it follows the dictates of reason and justice in furnishing him with the means. He is bound to look to the possession and to the records. If neither of these furnish any evidence that the defendants in the execution have parted with their interests, he is required to look no further. But if they continue in possession at the time of the sale as before, his case is still stronger. If, under such circumstances, he bids for the property, and it is struck off to him, he is protected from all unrecorded conveyances from the debtor of which he had no notice. The time when the sale is made, not the date of the sheriff's deed, nor of its acknowledgment, is the period at which the state of the possession and of the records becomes material:" Stewart *v.* Freeman, 22 Pa. 120, 123. Lefever *v.* Armstrong, 15 Pa. Superior Ct. 565, accord.

As the lease was prior to the judgment on which execution was had, and as the lessee was in possession at the time of the sale, of which possession the purchaser, as above expounded, must be taken to have had implied notice, and, it appears in the present case, actual notice as well, the purchaser and present plaintiff took subject to the lease, and with reference thereto stands in the shoes of a lessor (judgment debtor). "The operation of law is clearly to put the purchaser in the shoes of the defendant in the execution, at the time of the sale; . . ." Young *v.* Algeo, *supra*, p. 227.

If any doubt existed as to the law under the authorities, it is removed by section fourteen of the Act of April 20, 1905, P. L. 239, which provides that "The right to possession of a tenant for years shall be deemed paramount to that of a purchaser at a judicial sale if, and only if, the letting to him shall precede in point of date the entry of the judgment, order or decree on which such sale was had, and also shall precede the recording or registering of the mortgage, deed or will, if any, through which by legal proceedings the purchaser derives title, unless the letting is made with actual notice to such tenant of the contemplated entry of such judgment, order or decree, or of the fact of the execution of such mortgage, deed or other instrument of writing, and with intent to avoid the effect thereof." As the lease is dated prior to the entry of the judgment, the rights of the tenant are paramount to those of the purchaser on a sale in execution of the subsequent judgment: Roush *v.* Herbick, 269 Pa. 145; Albert *v.* National Outfitting Co., 270 Pa. 183.

It is contended that the statute ought not, and could not, have been intended to apply to a case like the present. It is argued that, as the judgment of the Reading National Bank and the mortgage of the First National Bank of Bangor fell by force of the sheriff's sale, the security for those liens is impaired if the lease be sustained. Plaintiff's contention is that if the sale upon the lien subsequent to the lease has the effect of discharging the liens prior to the lease, the lease falls with the discharged liens; and that if the holder of the prior lien, in order to protect his interest, buys in at the sale on the subsequent lien, the law should not compel him, merely because he did not himself issue execution on his prior lien, to take title subject to a lease which he could have destroyed by levying execution on his own prior lien, buying in the property at sheriff's sale, and thereupon disaffirming the lease.

472

No authorities have been cited to support these contentions, nor any in fact expressly and specifically disapproving them. An execution sale on either of the prior liens which fell by force of the sale, might have brought this case within the principle of Market Co. v. Lutz, supra. Such execution and sale was not had, and as said in Lefever v. Armstrong, supra, at page 573, distribution of the fund is not here in question. As said in similar circumstances in Cobb & Chase v. Deiches & Co., 7 Pa. Superior Ct. 252, 256, the plaintiff "bid at the sale with notice of the . . . claim of title," and "the result we have reached . . . is but . . . the logical and necessary application of a rule of law which has been adopted by the courts because of its beneficence in general application," and, we may add, has been adopted by the legislature in the enactment of section fourteen of the Act of 1905.

And now, to wit, February 24, 1931, defendant's rule for judgment *non obstante veredicto* is made absolute.

From Charles K. Derr, Reading, Pa.