J-A29033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARIAN R. BURNETT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FRANK J. JANOCHA, a/k/a FRANK J. | : | |
| JANOCHA, JR., AND WENDY G. | : | |
| JANOCHA, | : | |
| | : | |
| Appellants | : | |
| _____ | : | |
| WENDY G. JANOCHA, | : | |
| | : | |
| Appellee | : | |
| v. | : | |
| | : | |
| FRANK J. JANOCHA, | : | |
| | : | |
| Appellant | : | No. 390 WDA 2016 |

Appeal from the Order February 11, 2016
in the Court of Common Pleas of Allegheny County,
Family Court Division, No(s): FD 12-008436-006

BEFORE:  DUBOW, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:        **FILED DECEMBER 22, 2016**

Frank J. Janocha, a/k/a Frank J. Janocha, Jr. ("Frank"), appeals from the Order granting an equitable lien in favor of Marian R. Burnett ("Burnett") against the real property located at 107 Park Road, Carnegie, Pennsylvania ("the Park Road Property").[1]  We affirm.

---

[1] Burnett named both Frank and Wendy G. Janocha ("Wendy") as defendants in her "Complaint in Equity, *in rem*, for an equitable lien upon real estate" ("Complaint in Equity").  However, at trial, Wendy agreed with Burnett's position, **see** N.T., 1/26/16, at 38, and she did not file an appeal.

Frank and Wendy (collectively, "the Janochas") were married on November 28, 1986. In July 1995, Burnett, Wendy's mother, loaned the Janochas $162,500 to purchase the Park Road Property. On December 27, 1995, the Janochas signed a Mortgage Note (the "Note"), promising to pay Burnett $162,500, plus 6.5% interest per annum.[2] The Note "is secured by a Mortgage upon real estate described herein." The Note provides for monthly payments to Burnett "until the entire principal debt, together with interest thereon, is paid in full." The Note also provides that "[i]f not sooner paid, all accrued interest together with the outstanding principal shall be due and payable on the 1st day of December, 2025." Additionally, there is an amortization schedule attached to the Note, which details the total amount of the loan, the length of the repayment plan, the interest rate, and a schedule of payments (including the distribution of each monthly payment between principal and interest).

The Janochas made approximately 20 payments to Burnett in accordance with the terms of the Note in 1996 and 1997. The Janochas stopped making payments in August 1997.

In 2006, the Janochas filed a voluntary Petition for relief under Chapter 13 of the Bankruptcy Code. In Schedule D of their bankruptcy Petition, and in the original bankruptcy Plan, Burnett was listed as a secured creditor holding a Mortgage on the Park Road Property. During the

---

[2] Burnett did not sign the Note.

bankruptcy proceedings, it was discovered that the mortgage was never recorded. The Janochas did not file a Motion to avoid the lien.

Subsequently, the Janochas filed two amended bankruptcy Plans, each of which identified the mortgage as an unsecured claim. Burnett did not file an objection. Burnett agreed to allow the Janochas to defer payments under the Note until the bankruptcy proceedings had concluded. The Second Amended Plan was confirmed on a final basis in 2006. After the Janochas complied with the terms of the Second Amended Plan, the bankruptcy court approved the Trustee's Final Report and Account, which identified Burnett as a secured creditor with a claim amount of $0.00. The June 17, 2011 Order confirming the Trustee's Final Report and Account provided that "[the] revestment of property is free and clear of any and all claims or interests except as otherwise treated in the [P]lan or in the Order confirming the Plan." On June 27, 2011, the Janochas were granted a Discharge in bankruptcy ("Discharge Order").

The Janochas separated in March 2011, and Wendy filed a Complaint in Divorce in November 2012. During the divorce proceedings, Frank claimed for the first time that the Park Road Property was owned free of any encumbrance. In May 2014, Burnett filed a Motion to Reopen and a Motion for relief from stay with the bankruptcy court, asserting that she holds an equitable lien on the Park Road Property. Burnett subsequently filed several amended Motions to Reopen. On March 28, 2015, Burnett filed a Complaint

in Equity in the Allegheny County Court of Common Pleas. The bankruptcy court denied Burnett's Third Amended Motion to Reopen, and noted that "all of the parties will have their day in state court." ***Burnett v. Janocha (In re Janocha)***, 2015 Bankr. LEXIS 39, *15 (Bankr. W.D. Pa. 2015).

By Order dated April 27, 2015, Burnett's Complaint in Equity was transferred from the Civil Division to the Family Division to be consolidated with the divorce action. A one-day trial was held on January 26, 2016. On February 11, 2016, the trial court entered an Order granting an equitable lien in favor of Burnett in the amount of $159,891.47, plus 6% interest since August 1997, and providing that the lien must be paid in full before either Frank or Wendy would be entitled to distribution of the proceeds from the sale of the Park Road Property.

Frank filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Frank raises the following questions for our review:

I. Did the [trial] court commit reversible error in finding an intent among all the parties to create an equitable lien in favor of Burnett?

II. Did the [trial] court commit an error of law in holding that Burnett's disputed lien on the marital residence survived both the [] Discharge Order and the Bankruptcy Court Order[,] revesting property to the [Janochas] free and clear of all liens and encumbrances?

III. Did the [trial] court commit an error of law in failing to conclude that [Frank's] equitable defense of laches relating to Burnett's delay in proceeding with the [Complaint in Equity] estopped Burnett from pursuing her claim?

Brief for Appellant at 2-3 (issues renumbered).

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

*Wyatt, Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa. Super. 2009) (citation, brackets and ellipses omitted).

In his first claim, Frank asserts that the trial court erred in finding that all parties shared the requisite intent to create an equitable lien in favor of Burnett. Brief for Appellant at 17. Frank argues that there is no evidence that the parties intended to create a security interest in favor of Burnett, and that the loan of $162,500 should instead be characterized as an advancement for purchase of realty. *Id.* at 18. Additionally, Frank claims that the Note was not executed until five months after the deed was recorded, and that Burnett never acknowledged the Note. *Id.* Frank also argues that the trial court erred in concluding that the Janochas' promise to repay the loan following the bankruptcy proceedings evidenced an intent to create a lien, where the bankruptcy proceedings concluded 16 years after they purchased the Park Road Property. *Id.* at 19.

"An equitable lien arises either from a written contract[,] which shows an intention to charge some particular property with a debt or obligation, or is implied and declared by a court of equity out of general considerations of right and justice…." *Baranofsky v. Weiss*, 182 A. 47, 48-49 (Pa. Super. 1935) (citation omitted).

> In order for an equitable lien to arise, there must be an obligation owing by one person to another, a *Res* to which that obligation attaches, and an intent by all parties that the property serve as security for the payment of the obligation. The potential lienor must satisfy the Chancellor that in equity and good conscience is he entitled to a lien.

*Mermon v. Mermon*, 390 A.2d 796, 799-800 (Pa. Super. 1978) (citation omitted). Additionally, "[t]o establish a right to an equitable lien, the evidence must be clear, precise and indubitable as to the intention of the parties." *Id.* at 799 (citation and ellipses omitted).

Here, the Note, which was signed by both Frank and Wendy, provides that it "is secured by a Mortgage upon real estate described therein." Note, 12/27/95, at 1 (unnumbered); *see also* N.T., 1/26/16, at 8 (wherein the Note was admitted into evidence as Exhibit 1). The Note requires monthly payments, and includes an amortization schedule detailing the manner in which each payment shall be distributed among the principal and interest throughout the term of the mortgage. *See* Note, 12/27/95, at 1, 4-13 (unnumbered). Additionally, the Note provides that "the entire [p]rincipal shall be payable on demand by [Burnett] or upon the sale of the real estate *securing* this Note." *Id.* at 1 (unnumbered) (emphasis added). Thus, the

Note, on its face, evidences an intent by the Janochas to assume the obligations of a mortgage on the Park Road Property, as well as an intent that the property would serve as security for payment.

At trial, Francis Corbett, Esquire ("Attorney Corbett"), the Janochas' bankruptcy attorney, testified that the original bankruptcy Plan identified Burnett's claim as secured by a mortgage. *See* N.T., 1/26/16, at 14-15. Attorney Corbett testified that he subsequently sent a letter to the Janochas, indicating that Burnett's claim was, in fact, unsecured, because the mortgage was never recorded, and that Burnett had agreed to allow Frank and Wendy to defer payments until they completed their bankruptcy Plan. *See id.* at 16-17. Attorney Corbett also acknowledged that distributions to Burnett were removed from subsequent bankruptcy Plans. *See id.* at 19.[3]

Wendy testified that, after discovering that the mortgage was not recorded, Burnett agreed to allow the Janochas to pay her back after they had completed their bankruptcy Plan. *See* N.T., 1/26/16, at 23-24. Additionally, Wendy testified that she and Frank discussed Burnett's offer to settle the Mortgage for $125,000, and that Frank told Wendy that he had

---

[3] We note that the Trustee's Final Report and Account, which was confirmed by the bankruptcy court's June 17, 2011 Order, identified Burnett as a secured creditor. Although the Trustee's Final Report and Account lists Burnett's secured claim in the amount of $0.00, this likely reflects the parties' agreement to defer payments under the Note until the Janochas satisfied the terms of their bankruptcy Plan. At trial, Attorney Corbett testified that such an agreement is not unusual when the creditor is a family member. *See* N.T., 1/26/16, at 18. Attorney Corbett also testified that, in his understanding, the Janochas intended to repay Burnett after the bankruptcy proceedings had concluded. *See id.*

every intention of repaying Burnett. *See id.* at 24. Wendy agreed that she owes Burnett money for the Park Road Property. *See id.* at 38.

Burnett testified that she loaned the Janochas money for the house to "help them out to get started," and the agreement included a 6.5% annual interest rate. *Id.* at 48-49. Additionally, Burnett stated that she agreed to defer the payments during the bankruptcy proceedings. *See id.* at 50. Burnett testified that she was aware of the bankruptcy proceedings, but that she never attended any of the hearings or filed proof of her claim. *See id.* at 64-65.

Frank testified that he did not recall signing the Note, but that generally, "[Wendy] would hand [him] a paper and say, hey, you got to sign here, sign here." *Id.* at 70. Frank also stated that he did not know how many payments were made to Burnett, or whether any payments had been made after the closing of the bankruptcy proceedings. *See id.* at 70-71. Frank testified that he remembered meeting with Wendy and telling her that it was always his intention to repay Burnett. *See id.* at 81.

The trial court found that Frank had acted as though a mortgage existed on the Park Road Property for 10 years; Frank agreed to make payments on the mortgage even after discovering that the Note had not been recorded; Frank never questioned Burnett's right to be paid until Wendy filed for divorce; and, in light of the documentary evidence of record, Frank was not credible. Trial Court Opinion, 5/16/16, at 4 (unnumbered).

Upon review, we agree with the trial court's determinations, and conclude that the competent evidence of record supports the imposition of an equitable lien on the Park Road Property in favor of Burnett.[4] Therefore, Frank is not entitled to relief on this claim.

In his second claim, Frank argues that the bankruptcy court's Discharge Order extinguished any lien claimed by Burnett, as she failed to seek the imposition of an equitable lien prior to the commencement of the Janochas' bankruptcy proceedings. Brief for Appellant at 9-10. Frank also contends that the bankruptcy court's Order confirming the Chapter 13 Plan, and the June 17, 2011 Order, bar Burnett's claim under the doctrine of *res judicata*. *Id.* at 11. Frank claims that the Chapter 13 Plans classified

---

[4] Moreover, the failure to record the mortgage does not necessarily invalidate the terms of the Note. Although Pennsylvania's recording statute provides that "[n]o … mortgage … shall be good … unless such deed be … recorded within six months," 21 P.S. § 621, the statute has been held to protect only *bona fide* third parties from secret liens. ***See Britton's Appeal***, 45 Pa. 172, 175 (Pa. 1863) (tracing the history of section 621 and stating that "notwithstanding its letter, it was from the first construed, as the British statutes have been, to apply only to such unrecorded mortgages as are unknown to a subsequent purchaser. In other words, it was held to be for the benefit of those only who, without it, would be defrauded by a mortgage of which they had no notice."); *see also **Lefever v. Armstrong***, 15 Pa. Super. 565, 572 (Pa. Super. 1901) (stating that "[t]he object of recording a mortgage is to give notice to third persons; between the parties thereto a mortgage is just as effectual for all purposes without recording as with it"); ***In re Fisher***, 320 B.R. 52, 63 (E.D. Pa. 2005) (stating that, under Pennsylvania law, "a deed is valid, as between the actual parties, without the acknowledgement or recordation."). Further, sections 351 and 444 provide that an unrecorded mortgage is invalid only as to subsequent *bona fide* purchasers or mortgagees. ***See*** 21 P.S. §§ 351, 444; ***see also Roberts v. Estate of Pursley***, 718 A.2d 837, 841 (Pa. Super. 1998). Thus, as a party to the mortgage, Frank cannot now claim that the unrecorded mortgage is invalid as against him.

Burnett's claim as unsecured, and that Burnett received notice of this fact but never contested the bankruptcy court's Orders. *Id.* at 12-13. Additionally, Frank argues that the June 17, 2011 Order "makes clear that all property 'revested' to [the Janochas] 'free and clear of any and all claims.'" *Id.* at 13.

"Ordinarily, liens and other secured interests survive bankruptcy." *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991). Additionally, a discharge in bankruptcy does not release the debtor's real estate from the lien of a mortgage created before the bankruptcy. *See Long v. Bullard*, 117 U.S. 617, 620-21 (1886); *see also Beneficial Consumer Discount Co. v. Hamlin*, 398 A.2d 193, 199 (Pa. Super. 1979) (*en banc*) (stating that "all pre-bankruptcy liens are unaffected by the discharge unless specifically invalidated by the Bankruptcy Act."). "Section 524(a)(2) [of the Bankruptcy Act[5]] … does not prohibit the holder of an unavoided lien from enforcing it against a debtor in an *in rem* proceeding. It prohibits only the commencement or continuation of an action to collect debtor's *personal*

---

[5] Section 524(a)(2) of the Bankruptcy Act provides the following concerning the effect of a discharge in bankruptcy:

(a) A discharge in a case under this title—

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).

liability that arose in connection with the lien." ***Reed v. S & T Bank***, 274 B.R. 155, 158 (Bankr. W.D. Pa. 2002) (emphasis in original, footnote added); ***see also Johnson v. Home State Bank***, 501 U.S. 78, 84 (1991) (stating that "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*.").

The bankruptcy court considered the relevant case law, and concluded that, "to the extent [] Burnett possesses a valid equitable lien and to the extent it was not divested by the events of [the Janochas'] bankruptcy, nothing in the [] [D]ischarge [O]rder would prevent [] Burnett from enforcing the equitable lien against the [Park Road P]roperty." ***Burnett v. Janocha (In re Janocha)***, 2015 Bankr. LEXIS 39, *9-10 (Bankr. W.D. Pa. 2015). Additionally, the bankruptcy court noted that the Chapter 13 Trustee did not file a motion to avoid the lien, and that such an action, if filed, "would have rendered any lien claimed by [] Burnett a nullity…." ***Id.*** at *11-

12 n.3.[6]  The bankruptcy court also stated that "since the discharge injunction only enjoins *in personam* claims against the [Janochas], there presently is no impediment to the state court deciding the controversy." *Id.* at *14.

Upon review, we conclude that, because Burnett's Complaint in Equity seeking the imposition of an equitable lien is an action *in rem*, rather than *in personam*, the equitable lien was not extinguished by the Discharge Order. *See Johnson, supra*; *see also Reed, supra*.  The Janochas signed the Note in 1995, more than a decade prior to the commencement of the

---

[6] A bankruptcy Trustee's avoidance powers are described in Section 544 of the Bankruptcy Act, which provides, in relevant part, the following:

**§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

* * *

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3); *see also In re Bridge*, 18 F.3d 195, 199 (3d Cir. 1994) (stating that "as of the date of the [bankruptcy] petition's filing … [Section] 544(a)(3) confers upon the trustee the rights of a bona fide purchaser when … real property is at issue.").

bankruptcy proceedings, and therefore, the resulting *in rem* lien remains unaffected by the Discharge Order or the Bankruptcy Act. **See Beneficial Consumer, supra**. Additionally, although the Note was never recorded, the Chapter 13 Trustee did not file a motion to avoid Burnett's lien, pursuant to Section 544 of the Bankruptcy Act, at any time during the proceedings. **See PNC Bank, Nat'l Ass'n v. Balsamo**, 634 A.2d 645, 653 (Pa. Super. 1993) (concluding that the appellant's lien survived bankruptcy proceedings where neither party took action to avoid appellant's judgment lien); **see also Reed, supra**; Bankruptcy Court Order, 8/23/06, at 2 (confirming the Janochas' Second Amended Plan, and providing that "[a]ll actions to determine the … avoidability … shall be filed within ninety (90) days after the claims bar date."). Accordingly, Frank is not entitled to relief on this claim.

In his third claim, Frank contends that the equitable defense of laches estopped Burnett from pursuing her claim for an equitable lien.[7] Brief for Appellant at 13. Frank states that he and Wendy executed the Note in December 1995, and asserts that while "the loan has no doubt been in default for quite some time, Burnett never exercised her apparent rights under the Note…." **Id.** at 14. Frank also observes that Burnett did not attempt to assert her rights during the bankruptcy proceedings or the five-year repayment period. **Id.** at 15. Frank argues that Burnett filed her

---

[7] We note that although the trial court did not review Frank's third claim in its Opinion, Frank properly raised this claim in his Pa.R.A.P. 1925(b) Concise Statement.

- 13 -

Complaint in Equity "only after it became apparent to her that [Frank] and [Wendy] were divorcing…." *Id.*

"Unlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical passage of time." *Kern v. Kern*, 892 A.2d 1, 9 (Pa. Super. 2005). Rather,

> [l]aches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual[,] and is determined by examining the circumstances of each case.

*Fulton v. Fulton*, 106 A.3d 127, 131 (Pa. Super. 2014) (citation omitted); *see also A-1 Discount Co. v. Nardi*, 735 A.2d 121, 124 (Pa. Super. 1999) (stating that "delay alone will not establish laches; instead, prejudice is an essential element of laches and the doctrine will not be applied in its absence."). Additionally,

> [t]he party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims.

*Commonwealth ex rel. Baldwin v. Richard*, 751 A.2d 647, 651 (Pa. 2000) (internal citations omitted).

Here, the Janochas began to default on the mortgage payments in 1997. Further, contrary to Frank's argument that Burnett filed the

Complaint in Equity after learning of the divorce, Burnett filed the Complaint in Equity after Frank argued for the first time in the divorce proceedings that the Note did not constitute a valid mortgage. Frank broadly claims that Burnett filed the Complaint in Equity "at a point that acts to the severe prejudice of [Frank]," and that "it is an action that severely prejudices [Frank] and his potential claim for distribution." Brief for Appellant at 14, 16.

Frank, having acted as though Burnett held a valid lien on the Park Road Property since he signed the Note in 1995, cannot now claim that he was prejudiced by Burnett's delay in filing the instant Complaint in Equity against her daughter and son-in-law. The delay appears to be the result of a familial agreement, and has not resulted in the type of prejudice that the doctrine of laches is intended to prevent. Frank failed to establish that he suffered a changed position in anticipation that Burnett would not enforce the Note. *See Miller v. Bistransky*, 679 A.2d 1300, 1302 (Pa. Super. 1996) (stating that "[p]rejudice exists where there is some changed condition of the parties which occurs during the period of, and in reliance on, the delay … and where the party asserting laches has changed his or her position in anticipation that a party will not pursue a particular claim."). Accordingly, because Frank failed to establish that he suffered prejudice as a result of the delay, he is not entitled to relief on his final claim. *See id.*

(dismissing appellant's laches claim where appellant failed to show adverse effects from a nearly 50-year delay); *see also A-1 Discount Co., supra*.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/22/2016